## Jackson, ex dem. Schuyler and others *vs*. Russell.

Where, by a will bearing date in 1735, two tracts of land of about 20,000 acres each, comprising together what was called a *manor*, were *devised*, and in a conveyance by the representatives of the devisee of one of the tracts was contained a *recital* that the original patentees had, as early as 1734, released and conveyed their interest in the *two tracts* to the testator; and when it was shewn that no claim had been interposed to the lands up to 1827, other than under the title of the testator, *it was holden* that the evidence was sufficient to authorize the presumption of a conveyance from the original patentees to the testator.

So *recitals*, in a power of attorney executed 36 years before the trial of the heirship of the constituents in such power, from another of the devisees, together with slight parol proof of such heirship, is *prima facie* sufficient to entitle a party claiming under a conveyance by virtue of such power, to recover in an action of ejectment.

The testimony of a witness proving that on search made in a surrogate's office for a will which, according to the laws relating to ancient wills, ought there to have been deposited, and such will could not be found, is equivalent to the testimony of the surrogate himself, although the witness

NEW-YORK,
May, 1830.

Jackson
v.
Russell.

is not a clerk in the office, the search being made under the direction of the surrogate. The certificate of the surrogate is not the only competen t evidence in such cases.

After such preliminary proof, an exemplification of the will from the surrogate's office is competent evidence.

Want of proof of *notice to quit* cannot be urged as a ground for a new trial the objection was not taken at the circuit.

THIS was an action of ejectment, tried at the Oneida circuit in October, 1827, before the Hon. NATHAN WILLIAMS, one of the circuit judges.

On 2d January, 1734, letters patent were granted to William Cosby, *sheriff of Amboy*, and to ten other persons of a tract of land in the then county of Albany, described as situate on both sides of the Mohawk river, containing 22,000 acres of land and the usual allowance for highways, and as being part of two tracts alleged to have been purchased from the Indians in the year 1725, by N. E. and sundry other *Germans*. Also, on the same day, other letters patent were issued to William Cosby, *sheriff of Amboy*, and nine others, of another tract containing 20,000 acres, adjoining the first tract. An exemplification of a probate of the will of William Cosby, *governor of New-York* and New-Jersey, bearing date 19th February, 1735, was produced on the trial, whereby the testator devised in fee " all that tract of land lately purchased of the Germans by him and called the manor of Cosby, situate on both sides of the Mohawk river in Albany county," to his two sons William and Henry ; 'and on the *southeast* side of the river to his son William, and that on the *north west* side to his son Henry. Both the devisees died without issue, leaving a sister of the name of Elizabeth who was twice married, and had children of each marriage, who by a power of attorney bearing date 31st March, 1791, authorised John Watts and Charles Shaw, jointly and severally, to sell and convey the real estate whereof William, the son of Governor Cosby, died seised in this state, stating in the power that they, the constituents, were the only children of the late Elizabeth, the daughter of Governor Cosby, and reciting the death of William Cosby, son of the governor, to whose estate they had succeeded by inheritance according to the laws of this state. There was some evidence of the heirship of

the children of Elizabeth, the daughter of Governor Cosby, and of the decease of the several persons under whom they claimed, though it was rather of a slight character. On the 9th March, 1790, the legislature of this state authorized the heirs of William Cosby (the son of the governor) to take and hold the real estate whereof he died seised. On the 6th March, 1793. Mr. Watts, by virtue of the power of attorney to him and Shaw, executed a deed of the portion of the Cosby manor devised by the will of Governor Cosby to his son William, to General Philip Schuyler. This deed contained recitals of the seisin in fee of Governor Cosby of the two tracts of land granted by letters patent as aforesaid; the death of the devisee William; the inheritance of his estate by his sister Elizabeth; and the heirship of the constituents in the power of attorney named. The plaintiff also produced in evidence the original will of Henry Cosby, one of the sons of Governor Cosby, bearing date 6th October, 1753, devising unto his mother, Grace Cosby, all his real estate whersoever situate. Grace Cosby, by a power of attorney bearing date 25th February, 1761, authorized Sir William Johnson to sell her real estate in the then province of New-York, who, on the 20th April, 1762, by deed conveyed to Oliver Delancy the portion of the Cosby manor devised by the will of Governor Cosby to his son Henry; this deed *recited* the two letters patent granted 2d January, 1734; a lease and release of the two tracts granted thereby from the patentees to William Cosby, governor of the province of New-York and New-Jersey, bearing date the 8th and 9th days of January, 1734; the will of Governor Cosby and the devises therein contained; the death of the governor and the will of his son Henry, and his death. (The will of Henry Cosby was found in the surrogate's office of the city of New-York, but the original will of Governor Cosby was not found either there or elsewhere. The witness who found the will of Henry Cosby testified that he searched in the office of the surrogate of New-York for the will of Governor Cosby with the assistance and under the direction of the surrogate, in bundles of papers labelled *wills*, in which it was supposed the

NEW-YORK,
May, 1830.

Jackson
v.
Russell.

will might be; that he examined all the bundles marked with the letter C. which the surrogate handed him; that he did not examine under any other letters, although there were many boxes or pigeon holes of papers; this witness was not a clerk in the office, and had not the care or custody of the papers. It was also proved that on search made, the lease and release from the original patentees to Governor Cosby could not be found among the papers of Mr. Watts, of Sir William Johnson, or of the late General Schuyler.)

It was further proved, that the part of the *Crosby manor* lying on the *north* side of the Mohawk river, since 1762 had been held under the title conveyed to Oliver De Lancy by Sir William Johnson. And as to the part lying on the *south* side of the river, it appeared that in 1793, when the conveyance was executed by Mr. Watts to general Schuyler, it was understood that the latter had previously purchased the tract conveyed to him or a part thereof at a sale for quit-rents. A map of Cosby's manor, made by John R. Bleecker in 1786 for General Schuyler and others, was produced, and it was proved that a number of persons had paid rent for thirty years to General Schuyler for lots possessed by them in Cosby's manor on the south side of the river; that lots Nos. 98, 99 and 100 were held by a tenant under General Schuyler as early as 1798 or 1799; that these lots were subdivided, one of the subdivisions being designated as No. 9, which was occupied by the defendant, for which he paid rent to General Schuyler for 20 years previous to his death, which happened several years before the trial.

The defendant was in possession of about ten acres of land in what is called a *gore* between the two patents, and had been in possession thereof for 34 or 35 years; he claimed no title to the premises, and admitted that if the plaintiffs had title they must recover. A surveyor testified, that including the allowances for highways, the tracts conveyed by the patents of 1734 embraced what was commonly called the gore. It was admitted that the lessors of the plaintiff were the heirs at law of General Schuyler. A verdict was taken for the plaintiff, subject to the opinion of this court.

*Henry & McKown*, for plaintiff.

*C. P. Kirkland*, for defendant.

*By the Court*, SAVAGE, Ch. J. 1. It is objected that it does not appear that William Cosby, the patentee, was the same who was governor of New-York and New-Jersey. This fact seems not to have been agitated on the trial, but on examining the recitals in the deed from Grace Cosby to Oliver Delancy, William Cosby, sheriff of Amboy, seems to be one of the grantors in a deed of Cosby's manor to William Cosby, governor of New-York and New-Jersey. They were therefore different persons.

2. It is also said that there is no legal proof of the will of Governor Cosby. Search was made for the original by Mr. Green, which is objected to, but must be considered sufficient *prima facie*. He examined all the bundles of wills given him by the surrogate, and though he did not examine all the wills in the office, yet he examined those bundles in which the will in question should have been found if in the office. It is said the statute requires the certificate of the surrogate. The statute makes the certificate of the surrogate competent evidence, but it does not say that the fact may not be proved in any other manner than by the surrogate's certificate. Had the surrogate appeared in court, his testimony, proving that the will could not be found would have been sufficient. His certificate was made evidence for greater convenience, not because it was a higher species of evidence than his oath in open court. An official certificate of a surrogate could not have been received as evidence without the aid of the statute, (1 R. L. 308, § 21,) but it would have been competent, as has been stated, to prove by the surrogate himself that no such paper could be found in his office upon diligent search. The search of Mr. Green might be equally effectual as that of the surrogate; and when the fact is to be proved by oral testimony, his oath must be equally satisfactory with that of the surrogate, provided he has had an equal opportunity to ascertain the fact which he was called to prove. He searched all the bundles where the will would have been found, if in the

office, and all which would have been searched by the surrogate himself. I think, therefore, the testimony was competent, and sufficient to authorize the introduction of the exemplification.

3. It is objected that there are no releases from the patentees to William Cosby. The only evidence on this subject is what is contained in a release from Grace Cosby to Oliver Delancy for that part of the manor of Cosby which lies north of the Mohawk, and which was given by Governor Cosby to his son Henry. As this conveyance relates to part of the same tract of land to which the premises in question are claimed to belong, this evidence was proper. These releases are represented as having been executed a few days after the date of the patent; by these the whole estate in both patents became vested in Governor Cosby. In *Jackson* v. *Lunn,* (3 Johns. C. 114,) an assertion of title by a person not a patentee, and uninterrupted possession under him for a long time, were held sufficient to authorize a presumption of a conveyance to the person claiming title. In this case there has been no claim of title through any of the patentees except by Governor Cosby; and although the claim does not appear to have been asserted as soon as in the case of *Jackson* v. *Lunn,* yet all the circumstances of the case would, upon the same principle which governed that case, authorize a similar presumption; but when these circumstances are taken in connection with the release to Delancy, there is no room left for doubt as to the fact of such releases having been executed.

It seems to me also that the recitals in the documentary evidence in connection with the testimony of Mr. Watts, sufficiently prove the death of the several persons in interest previous to the assertion of right in those who succeed in the estate; and therefore, that a regular chain of title has been shewn from Governor Cosby to the lessors of the plaintiff, and as it is shewn by the surveyor that the premises in question lie within the patent, the plaintiff is entitled to recover. But even if the plaintiff had failed in shewing a chain of title, it appears that General Schuyler claimed the patent under a sale for quit-rents; that claim was co-evtensive with the pa-

tent; and as the premises are shewn to be within the patent, the plaintiff is as well entitled to recover upon this ground as upon shewing a regular paper title. The defendant's possession cannot avail him ; its character was never under a claim of title, and of course never adverse, but in subordination to the title of the true owner.

There is evidence also shewing that the defendant was the tenant of General Schuyler, and had paid him rent for the premises ; and as no objection was made on the trial of want of notice to quit, none can be made here. On the whole case therefore, I am satisfied that the plaintiff is entitled to judgment.