THE BANK OF TROY *vs.* TOPPING & HOLME.

A *promissory note* imports a consideration, and it is unnecessary to state any in pleading, or to prove any upon the trial, in the first instance.

When such note is given by an *executor* or *administrator* it is *prima facie* evidence of *assets*, because they are the legal consideration upon which the promise ought to be, and is presumed to be founded; it is, however, but *prima facie* evidence between the original parties, and the defendant may show that in fact there was a *deficiency of assets*, and of course *no consideration* to support the note. The *onus probandi* in such case rests upon the defendant.

Proof of proceedings had before a surrogate for the sale of *all the real estate* of the testator or intestate, a sale had in pursuance thereof, and a distribution of the proceeds among the creditors, *is not competent evidence* to establish the fact that the executor or administrator had *fully administered*, and had *no assets* belonging to the estate.

Where such proof was offered on a *second trial*, after a new trial granted on the ground that evidence had been excluded that the *personal estate had been exhausted* in due course of administration, the court, although they adjudged the proof offered on the *second trial* incompetent, ordered a *venire de novo*, to give the *administrators* the opportunity of adducing further proof.

THIS was an action of *assumpsit*, tried at the Rensselaer circuit in September, 1833, before the Hon. JAMES VANDERPOEL, one of the circuit judges.

The plaintiffs read in evidence a note, given by the defendants, for $4000, bearing date 2d *July*, 1829, payable to K. Rawson 60 days after date, signed as follows : " Margaret Topping, *administratrix*, John Holme, *administrator* to the estate of *John Topping*, deceased. After reading the note, the plaintiffs admitted the following facts: *John Topping* died intestate in *September*, 1828, and the defendants took out letters of administration on his estate. At the time of the death of Topping, the plaintiffs held a note against him, endorsed by K. Rawson, for the accommodation of Topping, for $5000, payable 5th *November*, 1828. When that note fell due, the defendants paid $1000, and gave a new note for the balance, payable in 60 days, endorsed by the same endorser, which note was renewed from time to time, until the note now in suit was given. On 25th *May*, 1829, the defendants applied

NEW YORK, to the surrogate of Rensselaer for an order to sell *all the real*
May, 1835. *estate* of the intestate for the payment of his debts, and such
Bank of Troy order was subsequently obtained, and the real estate sold,
v. and the proceeds of the sale paid in to the surrogate. The
Topping. note now in suit was proved before the surrogate, and the
plaintiffs received from him $2734,95, as their proportion or
dividend of the fund arising from the sale of the real estate.
The receipt of this sum *from the surrogate* was endorsed on
the note, under date of 1st February, 1830, and there were
two other endorsements of monies *received of Holme*—one of
$170, on 16th February, 1830, and the other of $200, on
10th April, 1830. Upon this state of facts, the defendants'
counsel requested the judge to charge the jury that the de-
fendants were not *personally* liable ; that the action, if any
could be maintained against them, should have been brought
against them in their *representative capacity ;* or, if not so,
then, to entitle the plaintiffs to recover in this action, if any
should have proved *assets* in the hands of the defendants.
The judge declined so to charge, and expressed his opinion
that upon the evidence before him the plaintiffs were entitled
to recover. The defendants' counsel then, *to prove that the de-
fendants had fully administered and had no assets,* offered
in evidence the proceedings had before the surrogate, upon
their petition praying for a sale of the real estate of the intes-
tate, in which petition it was stated that the defendants had,
in the due course of administration, exhausted the personal es-
tate of the intestate, and therefore prayed the aid of the surro-
gate in the premises. They also offered in evidence the vari-
ous orders made by the surrogate, pursuant to the statute in
such cases, the sale of all the real estate of the intestate, the
notice to creditors to come in and prove their debts, the pro-
duction by the plaintiffs, before the surrogate, of the note now
in suit, and the distribution made by the surrogate amongst
the creditors of the intestate, of the fund arising from the sale
of the real estate : all which evidence, so offered to be given,
was objected to by the counsel for the plaintiffs, and excluded
by the judge. Whereupon the jury, under the charge of the
judge, found a verdict for the plaintiffs for the balance due
upon the note, after deducting the endorsements. The de-

fendants having excepted to the several decisions, and obtained a bill of exceptions to be duly signed, now ask for a new trial.

*H. P. Hunt,* for the defendants.

*J. P. Cushman,* for the plaintiffs.

*By the Court,* SUTHERLAND, J. When this case was formerly before us, the general principle was established, that the defendants were not *personally* responsible for the payment of the note on which the action is brought, *unless they had assets* belonging to the estate of their intestate, John Topping, the original debtor to the bank. 9 *Wendell,* 273. The opinion of the court delivered on that occasion, establishes the following propositions : 1. That every promise requires a sufficient consideration to support it ; 2. That the promise of an executor or an administrator to pay the debt of his testator or intestate, in order to bind him personally, must be in writing, and founded upon a good consideration ; 3. That assets in the hands of an executor or administrator constitute a sufficient consideration to support the promise ; 4. That forbearance to sue is also a good and sufficient consideration ; 5. That a promissory note *imports a consideration,* but that between the original parties in the consideration may be inquired into ; and 6. That the note in question, therefore, was *prima facie* evidence of assets in the hands of the defendants sufficient to pay it ; but that it was competent for them to rebut that presumption, by showing affirmatively that they had no assets. Under this decision, the cause went down to a second trial, and it is now again brought before us on a bill of exceptions taken at the trial. All the facts necessary in order to entitle the plaintiffs, *prima facie,* to recover, having been proved or admitted, the counsel for the defendant, in order to show that they had fully administered, and had no assets, offered in evidence their petition to the surrogate of the county of Rensselaer, for a sale of the real estate of the intestate, for the payment of his debts ; presented on the 25th day of May, 1829, pursuant to the act of April 8th. 1813. The petition

NEW YORK,
May, 1835.

Bank of Troy
v.
Topping.

NEW YORK, May, 1835.

Bank of Troy
v.
Topping.

stated, among other things, that the defendants had, in the due course of administration, exhausted the personal estate of the intestate, and requested the aid of the surrogate in the premises. They also offered in evidence the various orders made by the surrogate, pursuant to the act; and also to prove the sale of all the real estate of the intestate, and notice to the creditors to come in and prove their debts, pursuant to the provisions of the act; and that the plaintiffs proved the note on which this suit is brought, before the surrogate, and received the dividend to which they were entitled out of the proceeds of the sale of said real estate. This evidence was objected to by the counsel for the plaintiff, and excluded by the judge; to which decision the counsel for the plaintiffs excepted, and the judge charged the jury that the plaintiffs were entitled to recover.

The first question which I will consider is, whether the proceedings before the surrogate, offered to be shown by the defendants, were competent evidence to prove that the defendants had *fully administered*, and *had no assets* belonging to the estate of John Topping. These proceedings are authorized and regulated by the 23d and 26th sections of the act relative to the court of probate, the office of surrogate, and the granting of administration. 1 *R. L.* 450, 2. The 23d section provides that where any executor or administrator, whose testator or intestate shall have died seized of any real estate, shall *discover* or *suspect* that the personal estate of such testator or intestate is insufficient to pay his or her debts, such executor or administrator shall make *a just and true account of said personal estate and debts*, as far as he can discover the same, and deliver the said account to the surrogate, and request his aid in the premises; and the surrogate shall thereupon make an order directing all persons *interested in such estate* to appear before him, and show cause why so much of the real estate whereof such testator or intestate died seized, should not be sold, as will be sufficient to pay his debts. Such order must be published for four weeks, &c., and at the time and place specified in such order, the surrogate shall hear and examine the allegations and proofs of such executor or administrator, and of all other persons *interested in such es-*

*tate*, who shall think proper to make any ; and if, upon due NEW YORK, examination, the said surrogate shall find that *the personal estate of such testator or intestate* is not sufficient to pay his or her debts, he shall order and direct the whole, if necessary, if not, a part of such real estate to be sold, to pay such debt. The 26th section declares that where only a part of the real estate is ordered to be sold, the monies arising therefrom shall be received by such executor or administrator, and shall be considered as assets in their hands for the payment of debts ; but where the whole real estate is ordered to be sold, the proceeds shall be brought into the office of such surrogate ; and if the same is not sufficient to pay all the debts, he shall cause the same, after deducting charges and expenses, to be divided among the creditors, in proportion to their respective debts ; provided, however, that a public notice of three months shall be given of the time and place of making such distribution ; and *provided also* that no part of the real estate of any testator or intestate shall be ordered to be sold, &c., unless the executors or administrators shall have duly made and filed an inventory of the goods, chattels and credits of such testator or intestate, before the application for such sale, nor until they shall have applied the personal estate, *or such part thereof as may have come to their hands*, to the payment of the debts of such testator or intestate.

The first observation which occurs in relation to this statute is, that the creditors are in no respect parties to the proceedings under it, until they come in to receive their dividends. They have no interest in opposing this application ; its object is to increase the fund out of which their debts are to be paid ; it is upon the face of it a proceeding for their benefit. The heirs, to whom the real estate belongs, are the only persons who are to be prejudiced by it. 2. The proceeding is instituted upon the mere allegation of the executors or administrators that they have *discovered*, or have *reason to suspect*, that the personal estate is insufficient to pay the debts ; and upon their delivering to the surrogate an account of said personal estate and debts, *as far as they can discover the same.* If the heirs do not come in and oppose the application, and the surrogate seems no reason to doubt the correctness of the

*Margin:* NEW YORK, May, 1835. Bank of Troy v. Topping.

NEW YORK, statement of the executors, &c. showing that the personal es-
May, 1835. tate is insufficient to pay the debts, and that they have appli-
Bank of Troy ed *such part thereof as may have come to their hands* to-
v. wards such payment, he of course makes an order for the sale of
Topping. the real estate. The whole proceeding is one with which the
creditors have nothing to do, and with which they have no
right to interfere, until it is consummated and the proceeds
of the sale are brought into court; and they then simply
received their respective dividends. The proceeding is not
founded upon the allegation or supposition that the execu-
tors or administrators *have exhausted all the assets belonging
to the estate,* by collecting and applying them in payment of
the debts; but only that they have reason to suspect or be-
lieve that there will be a deficiency of personal assets, and that,
as far as assets have come to their hands, they have probably
applied them. There is nothing like a formal accounting or
settlement, by the executors or administrators. They have
only to show that there will probably be a deficiency of per-
sonal assets, and the order may be granted. But there is an
express proviso to the 26th section, that nothing therein con-
tained shall be construed to bar or prevent any person from
bringing or maintaining any suit or action against any execu-
tor or administrator, for or in respect of the personal estate of
his or her testator intestate, or for or in respect of any
waste or misapplication thereof by such executor or adminis-
trator; that is, creditors shall not be prejudiced or affected
by the proceeding, nor shall executors or administrators be
protected by it, when sued or called to account, in respect to
the personal estate of their testator or intestate. It appears
to me, therefore, that it would be a violation of the first prin-
ples, to hold these proceedings competent evidence for an ex-
ecutor or administrator, when sued by a creditor of the estate,
that he had no personal assets belonging to it. But if they
were competent evidence of that fact, they certainly could
prove no more than that the administrators had no assets
when the application was made to the surrogate, which was
in *May,* 1829; leaving the plaintiffs at liberty to show that
other assets subsequently came to their hands. Now the note
on which this suit is founded was given in *July,* 1829, and

affords *prima facie* evidence that at that time the defendants had sufficient personal assets to pay it. In *Beatty* v. *The State of Maryland*, 7 *Cranch*, 281, it was held that the final account settled by an administrator with the orphan's court was not conclusive evidence for him on the issue of *devastavit vel non.* It was remarked by the court, that the account was only binding upon the representatives of the estate—the *distributees*; but that the creditors were no parties to the settlement of the account, and could not bound by it.

The cases relied upon by the defendant's counsel, upon this point, appear to me to have very little, if any bearing upon it. They are principally that class of cases in which it has been held that a liberal presumption will be indulged in favor of public officers; that where they are bound to do a certain act, the omission of which would be a culpable neglect of duty, the performance of it will be presumed, if there are any circumstances on which the presumption can rest, unless the contrary is proved. *Hartwell* v. *Root*, 19 *Johns. R.* 345. *Butler* v. *Maynard and others*, 4 *Wendell*, 548. *Barhydt* v. *Valk*, 12 *Wendell*, 145. These cases have no application to this, for two reasons: in the first place, the principle is applicable only *to public officers*, which executors and administrators are not; and second, it is not a culpable neglect of duty in an executor, not to have fully administered the personal assets, before he applies for an order to sell the real estate. The statutes does not require him to show that he has fully administered, but only that he believes that there will be a deficiency of personal assets, and that he had duly applied what have come to his hands. The case of *Hart* v. *Deamer*, 6 *Wendell*, 497, rests on a different principle. That was an action upon a bond; the obligator had been declared a lunatic, and a committee appointed for him. The suit was defended by the commitee on the ground that the obligor was a lunatic when the bond was executed; and an inquisition, taking under a writ *de lunatico inquirendo*, which found the obligor to have been a lunatic at the date of the bond, was held to be competent, though not conclusive evidence of the fact. It was put upon the ground, as it is in all the authorities, that an inquisition of lunacy is to be considered in the nature of a proceeding *in*

*rem*, (to which all the world are parties,) being instituted by the court of chancery, to whom the custody of lunatics and idiots is entrusted, to enquire into the state of the party's mind 1 *Phil. Ev.* 300. 1 *Hawk.* 258. 2 *Atk.* 412. 3 *Campb.* 126. 1 *Strange*, 68. This evidence was therefore properly rejected by the judge.

The judge was called upon, in the progress of the trial, to charge the jury that the action could not be sustained against the defendants *personally*, but should have been brought against them in their *representative capacity*, it appearing that the note on which the suit was brought was given for a debt of their intestate ; or, second, if the suit could be maintained in its present form, the plaintiffs could not recover without producing direct and affirmative proof, beyond what results from the note itself, that the defendants had assets. He declined so to charge, and expressed the opinion that the plaintiffs were entitled to recover in this form of action, and upon the evidence as it stood. To this opinion the defendants excepted. Upon the former argument of this case, it does not appear to have been contended, by the counsel for the defendants, that it was incumbent upon the plaintiffs to produce any other evidence of assets in the defendants' hands beyond that which the note itself implied. Without raising that question upon the trial, they offered on their part affirmatively to show that they had, in the due course of administration, *exhausted the personal estate* of the intestate. The judge rejected the evidence, and it was upon that ground that a new trial was ordered. Upon the second trial, however, the point was distinctly taken, and the question is now properly before us. It is very apparent, however, from the opinion of the court delivered on that occasion, that the note was considered as affording *prima facie* evidence of assets ; and that the plaintiffs were entitled to recover upon the strength of that evidence, unless it was rebutted by the defendants. The chief justice, after stating the leading principles which he considered applicable to the case and established by the authorities, and among others, that *assets* in the hands of an executor constitutes a sufficient consideration for a promise to pay the debt of his testator, says, " Assuming these principles to constitute the law of this case, had the plaintiffs any right to recover ? The defendants had

given a promissory note, which, since the statute of Anne, imports a consideration so far as to relieve the plaintiff from stating any consideration in his declaration, or proving any in the first instance; but it is well settled, as being the parties to a note, that the consideration may be inquired into, *and if the defendant shows a want of consideration, the plaintiff cannot recover.*" And in a subsequent part of the opinion, he says, " *The defendants in this case* having shown, or what is the same thing on this motion, having offered to show that they had fully administered and *had no assets* in their hands, there was no consideration for their promise." And he concluded by observing that *the facts offered in evidence* were a bar to a recovery against the defendants in their individual capacity, and that a new trial ought therefore to be granted. Independently of the evidence offered by the defendants, the opinion clearly holds that the plaintiffs had shown enough to entitle them to recover; though it appeared, on the face of the note, that it was given for a debt of the defendants' intestate.

The counsel for the defendants, however, contends that the cases of *Ten Eyck* v. *Van Der Voel,* 8 *Johns. R.* 120, and of *Schoonmaker* v. *Roosa & Dewitt,* 17 *Johns. R.* 301, establish a different doctrine. In the first case, the question arose upon a demurrer to the declaration. The declaration was on a promissory note made by the defendant, by which, *an administrator of Peter Bregan,* deceased, he promised to pay the plaintiffs $61,72, *for value received by John Bregan and heirs,* on demand, with interest. It was held that the declaration was bad ; that it did not state a good consideration for the promise. The court say, the defendant, as administrator, promises to pay a debt in the right of others. The note states that *the value received was by third persons,* and there is no consideration or inducement for the promise. The writing repels any presumption of consideration, (received by the defendant,) because it admits that the value was received *by John Bregan and his heirs.* It is evident, if the note had been *for value received* merely, without stating by whom, that the declaration would have been held good. The legal presumption would then have been, that it was given for a debt due from the estate *in consideration of assets in his hands* belonging to the es-

tate. That case therefore does not decide that a promissory note in the usual form, given by an administrator, does not afford *prima facie* evidence of assets sufficient to pay it. Nor is any such doctrine held in *Schoonmaker* v. *Roosa & Dewitt,* as I understand that case. Roosa and Dewitt were executors of one Levi Dewitt, between whom and the plaintiff Schoonmaker there existed demands and differences at the time of his death. On the 10th June, 1813, the plaintiff and defendants entered into a verbal agreement, by which they appointed Lucas Elmendorf sole arbitrator to settle and adjust all differences and demands existing between the plaintiff and the defendants, *as executors of the last will and testament of Levi Dewitt, deceased.* For the purpose of binding the parties to the submission, they respectively executed notes to each other on the same 10th day of June, 1813. The defendants, in their note, promised to pay to the plaintiff, or order, $1500, on demand, for value received. The note given by the plaintiff to the defendants was precisely the same. These notes were put into the hands of the arbitrator, with directions by the parties for him to endorse thereon the amount which he should find due from the estate of Levi Dewitt. It was proved that it was verbally explained and agreed between the parties, at the time of submission, that the defendants, for any thing that should be awarded against them, were to be liable only in their capacity of executors, and in the course of administration, and not in their individual capacities ; and that the award was made and the notes endorsed and delivered by the arbitrator, in pursuance of such submission. The plaintiff's suit was brought upon the note thus given by the defendants. The note was produced and proved upon the trial, with an endorsement on the back of it, made by the arbitrator, by which it appeared that he found a balance of $97,38 due from *Levi Dewitt* to the plaintiff, and *that in pursuance of the authority vested in him by the parties,* he reduced the note to that amount. All this parol evidence, explaining the origin and nature of the transaction, was objected to by the plaintiff as incompetent, but the court of common pleas of Ulster county, in which the suit was brought, decided that it was admissible, and that the action could not be maintained, and

accordingly nonsuited the plaintiff. The cause was brought
into this court upon a bill of exceptions and writ of error, and the judgment below was affirmed.

The principal grounds relied upon by the counsel for the plaintiffs in error, for a reversal of the judgment were, 1. That parol evidence was inadmissible to show how the note was intended to be made, or any terms or condition varying the written contract, upon the authority of *Thompson* v. *Ketchum* 3 *Johns. R.* 189, and *Hoare* v. *Graham* 3 *Camp.* 57; 2. That if the evidence was admissible, it showed a case of submission to arbitrators, and that such submission by an executor is conclusive evidence of assets, as decided in *Barry* v. *Rush*, 1 *T. R.* 691. On the other side it was contended that this case formed an exception to the general rule, that parol evidence was not admissible to vary written contracts; that the giving of the note and the submission were simultaneous, and the endorsement of the arbitrator, produced by the plaintiff himself, showed the purpose for which the notes were given; that the notes were delivered to the arbitrator at the time of submission; that defendants' note had no legal operation until the arbitrator made his award, and delivered it to the plaintiff, in pursuance of the award; and that the endorsement which constituted the award must be taken with the note, as one and the same transaction. The court after citing the authorities which show, that as between the original parties, the consideration of a promissory note may be inquired into, say : " The defendants in this case were executors, and the note they gave was a mode adopted by the mutual agreement of the parties, to submit their difference with the plaintiff, as to matters of account between him and their testator, to arbitration. In *Pearson* v. *Henry*, 5 *T. R.* 6, it was decided that a submission to an award by an administrator was not an admission of assets; and if there are *no assets,* a personal promise by the administrator would be a *nudum pactum.* The award endorsed by the arbitrator shows, that it was intended merely that he should ascertain what was due from the estate of the intestate, and that the defendants should be liable only in their representative capacity, or so far only as they had assets. It was

incumbent, then, on the *plaintiff* to show, *affirmatively*, that the defendants had assets ; for a promise by an executor to pay is not binding, unless he has assets. It was considered a case of parol submission to arbitrators by executors, and the liability of the defendants was tested by the principles applicable, to such a case. The agreement to submit and the note and the award were considered as parts of the same transaction and as qualifying and explaining each other. The note was not considered as an independent security, possessing the legal attributes and qualities of a promissory note, under the statute. The evidence clearly showed that it was not so understood and intended by the parties. It had, under the circumstances of the case, and in the connection in which it was shown to have stood, no greater or other legal effect and operation than an ordinary submission to arbitration in writing by an executor would have. This case, therefore, does not decide that a promissory note, given by an executor for a debt of his testator, does not afford *prima facie* evidence of assets in the hands of the executor to pay it.

The cases referred to by the defendants' counsel, in 12 *Johns. R.* 349, 7 *Cowen*, 58, 3 *Wendell*, 244, and 8 *Johns. R.* 440, were all cases involving merely the question of a misjoinder of counts in actions against executors and administrators; and I do not perceive that they have any bearing upon this ; nor has the case of *Bentley* v. *Bentley*, 7 *Cowen*, 701. That was an action brought by the plaintiff, against the defendant, as executor, &c. upon a promissory note given by his testator. The defendant pleaded, among other pleas, *plene administravit*, and that he had *no assets*, &c.; to which the plaintiff replied, that he had assets. Upon the trial, the plaintiff proved his note and rested. The defendant contended that the plaintiff held the affirmative of the issue, as to assets, and was bound to introduce evidence to support it. The judge, however, decide that the burthen of proof rested upon the defendant, and the plaintiff had a verdict. We held, upon an examination of all the cases, that the plaintiff, upon such a plea and replication, held the affirmative, and granted a new trial. The suit it will be remarked, in that case, was brought upon a note *given by the testator, and not by the executor*. The ef-

a promissory note, when given by an executor, by way of ev- idence of assets, did not therefore arise in that case. The case of *Hindley* v. *Russell, executor, &c.*, was also an action on a promissory note, *given by the defendants testator*, and the point decided was, that an admission by the defendant, that the debt was just, and should be paid as soon as he could, was not evidence to charge him with assets. *Vide* 10 *Serg. & Rawle*, 346; 2 *Conn. R.* 680.

A promissory note, then, imports a consideration, and it is unnecessary to state any in pleading, or to prove any upon the trial in the first instance. When given by an executor or administrator, it is *prima facie* evidence of assets, because they are the legal consideration upon which such a promise ought to be, and is presumed to be founded. It is but *prima facie* evidence, however, between the orignal parties, and the defendant may show that in fact there was a deficiency of assets, and of course no consideration to support the note. The *onus probandi* in such case rests on him. Upon this branch of the case, then, the judge also decided correctly. If the defendants have assets, they are personally liable upon such a note as this, and the action is properly brought.

As we sustain all the decisions made at the circuit, presented by the bill of exceptions, the ordinary course would be to deny the motion for a new trial. But as it is possible that all the evidence in the power of the defendants to show that they had fully administered was not produced, relying with confidence upon the sufficiency of that which was given, I think it is competent and proper for us, in a case like this, to give the defendants another opportunity to produce further evidence.

A new trial is accordingly granted, on payment of costs.