Mr. Chief Justice Shahkey
delivered the opinion of the court.
This action of ejectment was instituted in the circuit court of Adams county, on the 28th of February, 1840, and at May term, 1843, a trial was had, which resulted in a verdict for the defendant. The case is brought up by the plaintiffs, on exceptions taken to the rulings of the court. The plaintiffs claim title as the heirs of Stephen Stevenson, to whom the land was granted *45 by the Spanish government by patent, bearing date the 15th of March, 1789, on which he received a certificate of confirmation by tire United States commissioners. It appears that Stevenson resided on the land up to the period of his death, which occurred in 1804. The defendant claims title by virtue of a sale made by the administrator on Stevenson’s estate, in 1806. The whole case turns upon the evidences of the regularity of that sale. If the administrator proceeded to sell, according to law, which authorized him to sell real estate for the payment of debts in a particular manner, then, of course, there is an end of the controversy. But it is said that his sale was void and passed no title, inasmuch as the law was not pursued, and the several points raised on the trial seem to centre mainly in an inquiry into the regularity observed by the administrator in making this sale. The position is taken, that in sales of this description the administrator must comply strictly with every requirement of the law, that the probate courts cannot order a sale, unless every thing necessary to give them jurisdiction of the person, and of the subject matter, appears upon their records. Many authorities are cited in support of this position unnecessarily; its general correctness we do not doubt; the principle is no where more rigidly enforced than by our own decisions. We certainly have not relaxed in any degree from the most rigid rule. But admitting this to be the general course of decision, is it fully applicable in the present case? It is of course, unless there be counteracting principles which overcome it. It is presented to us as a question depending on the legal strength of proof. The defendants have an apparent title, but it is said that the administrator had no power to make it., because the proper preliminary steps were not taken. This objection is met by an assertion, that all preliminary steps were taken; that enough appears of record to justify us in holding, that the law was complied with.
The doctrine of presumption, arising from lapse of time, has been pressed as sufficient to overcome whatever may seem to have been omitted by the administrator in the discharge of his duty, and it is entitled to great force; sufficient, indeed, as it seems to us, to obviate most of the objections raised, and we *46 shall first consider of this doctrine, before we proceed to notice the several objections raised, as their force will be then best understood.
From the dates given, it will be seen that we must have many difficulties to encounter in the process,of investigation. Here are many plaintiffs, mostly standing in the third generation from the ancestor under whom they claim, seeking to recover of a defendant who had been in possession under title adverse, for about thirty-four years before the commencement of the suit. Events are brought-up, which occurred in the early dawn of our territorial history. The legislative history is so imperfect, that the archives of state furnish but a meagre, broken outline of it, and the judicial history is equally destitute of accuracy and precision. In 1798, an imperfect territorial government was first organized. The legislative power was exercised by the governor and judges. In 1800, congress provided for a legislative body, to consist of nine representatives, to be elected by the people of the three counties, which then comprised the settled part of the territory. We know that the legislation was imperfect' in character, and limited to the wants of the few inhabitants that then occupied the territory, and we know also that even until within a late period, judicial proceedings, and especially those of the probate courts, were conducted with but little regard to exactness. The judges of probate were probably not generally lawyers. They acted without any uniform system fixed by construction of the statutes from Which their powers were derived. Under the circumstances, we could not expect the utmost regularity in their proceedings. Even at the present day, under the same statutes which then existed, we find many defects in the judgments and proceedings of the probate courts. We must therefore make the greatest allowance, after the great lapse of time, for apparent omissions and discrepancies. There seems to be then, a fair field for the application of the doctrine of presumption to the present case. What is the effect of its application I It seems to be this : When the plaintiffs prove title in the ancestor, and heirship, their case is prima facie made out. To rebut this, the defendant introduces a deed from the adminis *47 trator of the ancestor, and proves that some of the requisite steps are taken to enable the administrator to sell. But in ordinary cases this would not do; the defendant must prove affirmatively, by the records of the probate court, that all preliminary steps were regularly taken. As a substitute for the broken links in the chain of title, the defendant relies upon his long uninterrupted adverse possession, as sufficient to justify the presumption, in connection with his deed, and the other evidences, that his title in its inception was perfect; that the power of the administrator was duly exercised, and that the plaintiffs had virtually acknowledged his goodness of title by their long acquiescence. We have, then, the legal presumption in favor of the defendant, to rebut the •prima facie case of the plaintiffs. On this state of the case, the defendant must have the advantage, unless the legal presumption cán be repelled. The burden of proof seems to be thrown back upon the plaintiffs, for they must recover on a title paramount to that of the defendant. If this be so, then it is incumbent on them to prove that the administrator did not sell according to law, for unless they do this, the law, on the state of facts, presumes that he did. If they could make such showing, then, of course, the presumption yields, but nothing of the kind has been attempted in this case. Now we shall see how far the authorities go in sustaining counsel in this doctrine of presumption.
The case of Gray v. Gardner, 3 Mass. Rep. 399, seems to be directly in point. A sale of land had been made by an administrator. A lapse of twenty years, with proof that the probate offi.ce had been kept in a loose and careless manner, was held sufficient to justify the presumption, that the administrator had posted up the requisite notices, and had also taken the necessary oath preceding the sale. It was held to be necessary to a valid sale, that the administrator should have posted up the notices and taken the oath, and yet the court said that it might be presumed that he had done so. This case also decides, that the recitals in a deed of that age might be received to aid the presumption.
The decision in Knox v. Jenks, 7 Mass. Rep. 488, rests upon *48 the same principle. The court say: “ The rights of persons thus connected with the estate conveyed, and whose interests are affected by the authority to sell, are regarded by these provisions, and they, and any claiming under them, are not concluded by the exercise of the authority and license to sell in derogation of their rights, unless every essential requisite and direction of the law in this respect has been fully complied with. But even heirs and creditors are concluded after a long acquiescence; and a legal presumption of the regular exercise of the authority is accepted instead of proof.”
So after a lapse of thirty years, numerous defects in a tax collector’s sale were supplied by presumption. Colman v. Anderson, 10 Mass. Rep. 105; Pejepscut Proprietors v. Ransom, 14 Ib. 145. If such presumptions will supply the place of proof, with regard to sales made by the tax collectors, surely they should do so in the case of administrators; the former sell by a naked statute power; the latter under a decree of a court of competent jurisdiction.
In Hazard v. Martin, 2 Term. Rep. 84, the plaintiff claimed by an administrator’s deed, but there was no record of an order of sale, or any record showing that such order ever had been made by the probate court. Amongst the loose papers of the office was found this memorandum : “ Dec. 22, 1792, judgment of court, estate insolvent, and administrators ordered to sell the real estate.” This was deemed sufficient, in connection with possession for thirty years and the deed, to justify a presumption, that the administrator had proceeded regularly. It is insisted by the opposite counsel, in commenting on this case, that it does not appear from the opinion of the court that an order was necessary to enable the administrator to sell; the court does not say so, though perhaps the opinion might warrant the inference. But it is admitted that insolvency was necessary before sale could be made. Then, we may ask, where was the judgment of insolvency, or the evidences of it? It is found in the loose memorandum above extracted. Vague as it is, it was held sufficient foundation for all presumptions. The case is a very strong one in support of our position.
*49 The language of Judge Archer in Beall v. Lynn, 6 Har. & Johns. 361, is worthy of being extracted at some length. “Presumption is often resorted to for the purpose of supplying defective evidence; and, in this country, it is not oftener applied to any subject than to supply defective title to lands. It would be difficult' to make out the titles to many of the elder tracts of land in this state, by a regular deduction of title deeds from the patentees down to the present proprietors, without resorting, in some stage of them, to presumption. Records may sometimes be lost or destroyed; and ancient title papers may be defectively executed, or the prooof of them, from lapse of time, may be impossible. Yet in all these cases, the possession may have been invariably in the person claiming the land, and in those from whom he derives title. In such cases, possession which has been long undisturbed, and which is, in general, the concomitant of title, induces a belief in the mind, of title, little short of that which would be produced by the adduction of the most undeniable and best authenticated evidences of right.” In accordance with this language, the court presumed title, where one of the mesne conveyances, between the patentee and the holder of the land, was missing, on the strength of the lapse of time and the recitals in one of the deeds subsequent to the missing conveyance. The same court, on one occasion, held, that from a void deed, in connection with long possession, a valid conveyance might be presumed. Gettings v. Hall, 1 Har. & Johns. 14.
After twenty-three years’ possession under a deed made by attorney, the power of attorney was presumed. 6 Martin’s Louis. Rep. 153, N. S. The same point has been decided in other cases, and they furnish strong authorities in the present case, as both an attorney and an administrator convey by a power conferred, and it is as fair to presume the existence of the power in the one case as in the other. Indeed, the grant of administration is a circumstance in aid of such presumption, and gives a better ground for it than is to be found in the case of an attorney.
In New York the same principle seems to have been uni *50 formly recognized. In favor of long possession conveyances are presumed, and those made by attorney are sustained without proof of the authority; and recitals in old deeds are received as prima facie evidence. Jackson v. Lunn, 3 Johns. Cas. 117; McDonald v. McCall, 10 Johns. R. 377; Ib. 475; Schuyler v. Russell, 4 Wend. 543.
A leading case in England is found in Earl ex dem. Goodwin v. Baxter, 2 Black. Rep. The plaintiff sued in ejectment, claiming as assignee of an old term for one thousand years. Several assignments had been made prior to that under which plaintiff claimed, but he was able to prove only one of them. The others were presumed from his long possession. And it is now the settled doctrine there that grants, even as against the king, will be presumed, rather than disturb long possession; for it is truly said that otherwise ancient possession would injure, rather than strengthen a title. See 1 Phil. Evid. 161. But why multiply authorities, when the rule is so universally admitted"? The decided cases will be found collected in note 311, 2 Phil. Evid., and in the argument for the appellant in Grand Gulf Bank v. Bryan, 8 S. & M. 256, where the same doctrine was discussed by counsel, and fully recognized by this court. The reasons on which this rule of law is founded are too obvious to require much comment. Laws and judicial tribunals are established for defining and settling rights, so that order and tranquillity may prevail in the community. The policy of the law favors the repose of society, and hence it makes due allowances for the frailties of human memorials, and the difficulties in establishing perpetual evidences of the transactions of men. When so long a time has elapsed that certainty in the proof of events cannot be expected, it receives as a substitute that which is less certain in order to protect apparent right. A contrary policy is not to be tolerated. It would convert the law into an engine to work incalculable mischief. Instead of giving repose to society, it would be the means of promoting contention and strife which would often terminate in injustice.
Let us, in the next place, see whether the defects in the defendant’s title are such as are cured by the doctrine of presumption. *51 The preliminary steps to be taken by an administrator in making sale of real estate, at the time this sale was made, are pointed out by the statute as follows, to wit:
1. When the personal estate was discovered to be insufficient to pay the debts, he was required to return on oath an inventory of the estate and debts, as far as he could discover the same, to the orphans’ court or chief justice, and report the insufficiency of the personalty.
2. The court or chief justice was then to cause citations to issue, requiring persons interested to show cause why the land should not be sold; which citations were to be put up at three of the most public places in the county for thirty days, and to be published for the same length,of time in a newspaper.
3. At the time specified, or subsequently, the court was-to hear the allegations and proofs, and if necessary, to make an order for the sale of the land.
4. Before the administrator obtained the order from the clerk’s office, he was required to give bond that he would follow the directions of the law in making the sale, and faithfully account for the proceeds.
5. To the foregoing may be added the duties of the administrator in conducting the sale. He was to give notice of the time and place of sale, by advertising the same at three of the most public places in the county for forty days, and publish the same for three weeks in some newspaper published in the territory ; he was to sell at public vendue to the highest bidder on a credit of twelve months; he was to take bond and security for the purchase money, and was moreover required to make a written report of his proceedings to the orphans’ court.
6. He was, lastly, to make a deed to the purchaser.
Let us now see how far the defendant falls short in proving a strict compliance with the foregoing requisites. The first was substantially complied with. It is admitted that James Dunlop was duly appointed administrator, and at the July term, 1805, he returned an inventory, called an exhibit of the personal estate and debts due by Stephen Stevenson, deceased. The particular property was not specified, but the aggregate amount of *52 value was pot down at $1500. Certain debts were specified, but it is stated in the report that there were also a number of other claims against the estate, some unliquidated and some in suit, and that the estate was insolvent. This report was sworn to by the administrator. It cannot now be impeached collaterally, because it was not sufficiently explicit. It was deemed sufficient by the court.
We next find two citations which seem to conform to the requisites of the law, advertised in two numbers of a newspaper then published in Natchez, the first number issued on the 3d, and the second on the 10th of December, 1805. The citation is dated 3d December, 1805, and signed by the clerk officially. There is proof in the record that these two papers were the last in the volume. This proof was surely sufficient to show a compliance with the law, so far as it required the cita-, tions to be published in a newspaper, as but the two papers are to be found; but there is no proof that the citations were put up at three of the most public places in the county, and this is the first defect.
In the next place, we find that the records of the orphans’ ■ court show an order of sale in this way; the rough minutes of the court, as this evidently was, contains several entries, the subsequent referring to the precedent, viz: “Afterwards, to wit, at the January term of said orphans’ court, A. D. one thousand, eight hundred and six, it was ordered by said orphans’ court of Adams county that Joshua Vail, Administrator of John Lee, make sale of all the personal property of said Lee, deceased;
“ That the real property of Patrick Connelly, deceased, except the widow’s dower.
“ The same order respecting the estate of Stephen Stevenson, deceased.”
These several orders follow each other on the minutes, and though imperfect in form, are yet sufficiently intelligible to be understood, even without explanation. They are better than the order of sale which was sustained in the case of Hazard v. Martin. That was on a loose piece of paper, and not more certain; these are of record. But in aid of this order, the present *53 clerk of the court was examined, and testified that the book in which this order was found was the oldest book of records in the office. He was well acquainted with the records of the office ; that at the date of said order, the papers and records were kept very loosely, and the orders were frequently very imperfect, put down frequently in short, and could not be understood without reference to a preceding order. Dr. Wren, who was also clerk in 1818, and acquainted with the records of the office, testifies that he found them in a very loose and disordered condition, many things unrecorded which should have been placed on record; that, from the negligence of his predecessors, many of the records may have been lost. He also stated that he knew the clerk who made this entry; that he was a man of intemperate habits, and loose, in his office business. It is insisted that the testimony of North and Wren should have been excluded; we do not think so. Nothing is more common than to prove by parol the condition of the records of an office, and the manner in which they have been kept. Such proof was admitted in several of the cases already cited, and we held evidence of this character admissible in the case of Pagaud v. The State, 5 S. & M. 497, and probably have done so in other cases. It is not converting parol proof into record evidence, but it is a means of accounting for that which is missing. It is introdued to show the probability of a loss of record evidence. With this testimony we can have no difficulty in saying that the order of sale is sufficiently established. Indeed, we should probably have come to the same conclusion from the face of the record, without the explanatory proof. This book was evidently a rough minute of the proceedings, and from it a more perfect record should have been made out; but if it was ever done, it has been lost.
There is no proof that the administrator gave the bond required by law, or that he gave notice of the time and place of sale. Some of the witnesses speak of a sale of the land made by Dunlop, but whether.it was sold for cash or on a credit does not appear. There is no proof that he made a written report to the orphans’ court; but he made a deed to the purchaser, which is very full in reciting the title, seizen and death of Stevenson; *54 the appointment of Dunlop as_ administrator; the insufficiency of the personal estate to pay the debts; the report of insolvency ; the order of court to sell the tract of land; the giving of due and timely notice of the sale according to the directions of the statute; and the actual sale at public vendue to the highest bidder.
Up to the time the administrator was invested with power to sell by the order of court, we find but one deficiency in the proof, that is the absence of any evidence that the citations were posted up at three public places in the county. That was a matter in pais. There was no way of putting proof of a compliance in this particular upon record, except by taking the depositions of witnesses and having them recorded. The law did not require this to be done. There was no way provided by law for perpetuating evidence of a compliance with this requisition. After the lapse of thirty-four years, it would be too much to require of a party to prove that the law had been complied with in this particular. In the nature of things, such proof becomes next to impossible after so great a lapse of time, and the law does not require impossibilities. This is t.he only deficiency the law of presumption is called on to supply prior to the existence of a perfect right to sell according to the ceremonies to be observed by the administrator in conducting the sale. We have been strict in our decisions, in holding that every thing necessary to give the court jurisdiction of the subject matter and of the person must appear on the record, but we have not yet held that the subsequent irregularities of the administrator in making the sale, having a valid order for that purpose, are to be visited by the same consequences. On analogy to other sales under judgments, perhaps we should not be authorized in going so far. A bona fide purchaser at sheriff’s sale looks to the validity of the judgment; he must know that the court had jurisdiction of the subject matter and of the person; he is not affected by the irregularities of the sheriff in making the sale. An administrator sells under a power derived from the judgment.- The law favors the defective execution of a power, but it cannot cure a defective, power. But admitting, for the present, that it *55 was necessary for the administrator to pursue the statute strictly, and that there is no record proof that he gave the required bond, that he gave the requisite notice of the time and place of sale, or that he made the report of sale to the court, still we think that the authorities abundantly show that, under the circumstances, the law will presume that these several conditions were complied with. But the recitals in the deed show a full compliance, and they are entitled to some weight; they have been held in similar cases to be prima facie evidence. If we are so to regard them, then there is no defect in the proof; it establishes a complete title.
Having thus stated the principles, and having also shown the several defects in the proof to be supplied by them, it will be an easy matter to test the rulings of the court on the trial. We pass over the first, second, and third errors assigned. They question the admission of the deeds, the testimony of North and Wren, and the advertisements from the newspaper.
The fourth error assigned is, that the court refused to give the 5th, 6th, 8th, 12th and 13th instructions, asked for by the plaintiffs’ counsel. The first instruction refused is in substance this, that it must appear by the records of the court that citation was issued to the heirs of Stevenson to show cause why the land should be sold, or the order of sale is void. Admit that in a case differently situated this charge should have been given, we have shown why it should not have been given in the present case, and charges must always be applicable to the state of case before the court. The law .is, that after a great lapse of time, this strict proof may be dispensed with; its place may be supplied by presumption. To have given this charge would have been to exclude the legal presumption, and the possibility of supplying the place of lost.records. From such a charge the jury would have been bound to conclude that the record must show every thing, and that no secondary proof could be received.
The second charge refused is, that it must appear by the record that the administrator gave the bond required before he obtained the order of sale, or such order of sale is without authority. This admits of the same remarks that were made as *56 to the first; but it also admits of this further answer. . The order of sale preceded the giving of the bond, and the failure of the administrator to give bond could not vitiate a valid order, even if it would vitiate his salé. And, moreover, the statute makes no provision for recording the bond; how then should it appear of record ? And why not as well presume that he had given bond, as to presume that he had taken an oath, which we have seen may be done.
The third charge refused is, that the reservation of the widow’s dower in the order of sale, and in the deed from the administrator to the purchaser, is evidence that Stevenson left a widow, and estops the defendant from denying the same. If the widow were a party to this controversy, the force of this position might be more apparent. If it were intended to justify the presumption of the legitimacy of the children, its pertinency is not perceived, as it would not prove their legitimacy. It may have been that Stevenson left a widow, and still a part of the plaintiffs may be illegitimate. It would not follow necessarily that any of them were legitimate. We have found no law which, at that day, made the children legitimate by the subsequent marriage of the mother and reputed father. The charge then seems to have propounded but an abstract proposition, as it is wholly immaterial to the merits of this controversy whether Stevenson left a widow or not.
The last charge refused is, that cohabitation and acknowledgment are legal evidences of marriage, and if the jury believe, from the evidence, that Stephen and Mary Stevenson cohabited and held themselves out as man and wife, and raised and provided for a large family of children, which they acknowledged and held out to the world as their children, they must find for the plaintiffs. This was asking the court to weigh the evidence. The court might have charged the jury, as it after-wards did, that such circumstances would justify them in presuming a marriage, but such proof could not, under all circumstances, justify a verdict for the plaintiff. It must be recollected that there was rebutting testimony on this subject; and although cohabitation, &c. may’ have been proved, yet the rebutting *57 proof may have been sufficient to show that it was an illegal cohabitation. Cohabitation, and holding themselves out to the public as man and wife, furnished but presumptive evidence of marriage. The charge was too strong; it left no room for the jury to determine on the weight of evidence. The weight of evidence may have been against the actual marriage, but by giving the charge the court would have cut out all rebutting proof, by directing the jury that under proof of cohabitation, &c., they must find for the plaintiffs, notwithstanding the proof that no marriage was solemnized.
Several of the charges given at the instance of the defendant were objected to. The most of them may be resolved into this proposition: that in connection with his long possession, the defendant had proven enough to justify the jury in presuming that all necessary steps had been taken to enable the administrator to make a valid sale. The truth of the proposition, we trust, has been sufficiently shown, and we shall therefore omit to notice each charge particularly.
Certain other charges given will receive a passing notice; [ to wit, that by the warranty in the deed the defendant was not estopped from controverting the fact of the marriage of Stephen and Mary Stevenson, nor from questioning the legitimacy of the plaintiffs. The warranty is general, “excepting only the widow’s right of dower.” In this controversy we do not see how this exception in the deed is to estop the defendant from disproving the marriage, and certainly it does not estop him from disproving the legitimacy of the plaintiffs.' The exception has no connection with their legitimacy. If it was now a question as to the widow’s right of dower, the exception might be entitled to great force. We need not now say what weight it might be entitled to. This is not a recital in the deed, but an exception. Recitals in deeds sometimes operate as estoppels, but none but privies and parties shall have advantage of them. They depend upon the same principles that the admissions of a party do. Recitals only estop the party making them, and those claiming under him, but estoppels must be mutual. The plaintiffs deny that they are bound by any thing in this *58 deed. Their legitimacy is not recited, and the defendant cannot be precluded from disproving it.
Most of the plaintiffs are obviously barred by the statute of limitations, and certain charges given on that subject were excepted to, which were, in substance, that if the defendant had held twenty years’ adverse possession, the plaintiffs were barred, unless they were saved by infancy or coverture; that when the statute begins to run, it continues to do so, and if the plaintiffs rely on the exceptions in favor of infants or femes covert, they must show that they are entitled to the benefits of the exceptions. To these charges we see no objection.
On the motion for a new trial, we need only remark that we do not think the verdict was contrary to law or the evidence, but in strict accordance with both.
The laborious investigation which this case received from counsel has induced us to give our views on the prominent points more at length than we should have otherwise deemed it necessary to do. We have bestowed upon it due deliberation, and the result is that we think that the court, from the facts proven, was correct in its charges, and that enough was before the jury to authorize them to indulge every presumption in favor of the defendant’s title.
Judgment affirmed.