Burhans *v.* Van Zandt.

ALBANY GENERAL TERM, September, 1849.    *Wright, Harris, and Watson,* Justices.

BURHANS and others *vs.* THOMAS K. VAN ZANDT and others.

*It seems* that the decisions of a referee upon matters of fact, in equity cases, should be treated as being, not, like the verdict of a jury, conclusive unless palpable error is manifest, but like the report of a master, or the decision of a vice chancellor, upon any matter referred, under the former practice; where, upon exceptions, or appeal, all questions decided were the subjects of review. *Per* HARRIS. J.

By the execution and delivery of a deed of land, the entire legal interest in the premises becomes vested in the grantee; and if the grantor continues in possession, afterwards, his possession is not that of an owner, but of a tenant of the grantee.

He will be regarded as holding the premises in subserviency to his grantee; and nothing short of an explicit disclaimer of such relation, and a notorious assertion of right in himself, will be sufficient to change the character of his possession, and render it adverse to the grantee.

But from the time when the grantor explicitly disclaims holding under the gran-

Burhans v. Van Zandt.

tee, and openly asserts his title to the premises, in hostility to the title claimed under his own previous deed, his possession becomes adverse; even though he knows his title to be bad; and from that moment the statute of limitations will begin to operate.

A party in possession of land, claiming it as his own, under color of title in fee, is permitted to quiet such title by obtaining a conveyance of an adverse claim, without abandoning his previous claim of title.

But a person who acquired his possession in such a manner as to owe allegiance to the reversioners can not set up an outstanding title purchased in by him, to defeat their rights.

A possession acquired in subserviency to the title, of the reversioners, can not be defended, as against them, by asserting a new title subsequently acquired.

The general principle is, that one in possession may purchase in an outstanding title, for the purpose of strengthening his own. The only qualification of this rule is that his possession must not have been taken under circumstances which preclude him from disputing the title of the party claiming.

The qualification of the rule has its foundation in the law of estoppel, which will not allow a man to do what, in honesty and good conscience, he ought not to do. *Per* HARRIS, J.

But where a person enters under circumstances which constitute his possession, in its very inception, an adverse possession; and his claim is, from the beginning, hostile to that of persons claiming in remainder and reversion, and he enters, not in subordination to their right, but in defiance of it, there is nothing to impose upon him any obligation to protect the title of the remaindermen and reversioners, or to create a fiduciary relation between him and them.

If, therefore, while he is thus in possession, the premises are sold for the payment of an assessment, which is an incumbrance upon the premises, superior to the rights of either party, and the premises are bid off by a third person, the tenant in possession may purchase the same from him, and take a conveyance thereof, and thus acquire the title, for his own exclusive benefit.

A tenant for life, although bound to keep down the interest upon the incumbrances, out of the rents and profits, is not bound to extinguish the incumbrances themselves.

IN EQUITY. On the 14th of August, 1816, Thomas Van Zandt, being seised in fee of a block of ground in the city of Albany, bounded east by South Pearl-street, south by Beaver-street, west by Market-square, and north by the public market, executed a deed of trust, whereby, out of the great affection and love which he had for his sister Hannah Van Antwerp, wife of Daniel L. Van Antwerp, and Alida Van Antwerp, William V. Z. Van Antwerp, Henry Van Antwerp, Stephen Lush Van Antwerp, and Eliza Ann Van Antwerp, the children of his sister, and in consideration of such love and affection, as also for

the better providing for the maintenance of himself during his natural life, and after his death for the maintenance of the said Hannah Van Antwerp, during her natural life, and after both their deaths, for the better maintenance, support and livelihood of the said children, he granted and conveyed the premises to Daniel L. Van Antwerp, in trust to manage, superintend and govern according to the best of his knowledge and ability, so as to render the same as productive as possible, during the lifetime of the said Thomas Van Zandt, and to pay over the product thereof from time to time as received, to the grantor, and after his death to manage the same, in manner aforesaid, and pay the products thereof as received, to the said Hannah Van Antwerp during her lifetime, and immediately after the death of both the said Thomas Van Zandt and Hannah Van Antwerp, to convey the premises in fee by good and sufficient conveyances to the said children, or to such of them as should then be surviving, as tenants in common. The deed was duly acknowledged and recorded. The trustee did not take possession of the premises, but Thomas Van Zandt continued after the execution of the conveyance to receive the rents of the premises himself and to appropriate them to his own use.

In February, 1821, John Van Zandt, a brother of Thomas, commenced a suit against him in the Albany mayor's court upon an alledged indebtedness for board, and on the 8th of May following, a judgment was perfected by default, for $1728,78. An execution was issued upon the judgment, to the sheriff of Albany, by virtue of which, on the 6th day of July, 1821, he sold the right, title and interest of Thomas Van Zandt, in the premises, to William J. Van Zandt, a son of the plaintiff in the execution, for $1000. On the 15th of October, 1822, the sheriff executed a deed to the purchaser.

On the 20th of August, 1828, William J. Van Zandt filed his bill in the court of chancery against Daniel L. Van Antwerp and his wife, and their children, alledging that, by virtue of his sheriff's deed, he had acquired an absolute title, in fee simple, to the premises, and charging that the trust deed executed by Thomas Van Zandt to Daniel L. Van Antwerp was fraudulent

and void, and a cloud upon his title, and praying that the same might be so declared, and he quieted in his possession. The defendants in that bill, in their answer, asserted that the trust deed was a valid conveyance, and insisted that the judgment, sale, and conveyance, under which the plaintiff claimed, were colorable, fraudulent, and void, as against them. Proofs having been taken in the cause, it was referred, for hearing and decision, to the vice chancellor of the fourth circuit ; and it having been argued upon the pleadings and proofs, a decree was made on the 21st day of October, 1833, dismissing the bill with costs. Daniel L. Van Antwerp died in 1832, and on the 30th of January, 1843, the court of chancery appointed the plaintiff, David Burhans, trustee in his place. Thomas Van Zandt died in April, 1842. On the 27th of November, 1834, Stephen L. Van Antwerp released and conveyed to William J. Van Zandt all his right, title and interest in the premises.

On the 5th of April, 1836, William J. Van Zandt, being at the time in possession, and receiving the rents, the premises were sold by the corporation of the city of Albany for the payment of an assessment for $195,75 for widening Beaver-street. Robert Packard became the purchaser, for 1000 years. He received the usual declaration of sale from the corporation, and on the 20th day of July, 1838, conveyed his interest in the premises, by deed of assignment, endorsed upon the declaration of sale, to William J. Van Zandt.

The bill in this suit was filed in the court of chancery in January, 1845, by Mrs. Van Antwerp and her surviving children, except Stephen, who had released his interest to William J. Van Zandt, and the children of her deceased son William, together with the trustee, against William J. Van Zandt, for the purpose of having the declaration of sale to Packard, and the assignment to William J. Van Zandt, cancelled, and to compel him to surrender the possession of the premises to the trustee. The bill charged that when the suit was commenced upon which John Van Zandt recovered his judgment against Thomas Van Zandt, the latter was not indebted to the plaintiff in the suit, and that the suit originated and was prosecuted to judg-

ment by means of a fraudulent agreement and connivance between John Van Zandt and Thomas Van Zandt, for the purpose of defeating the rights of those claiming under the deed of trust ; that Thomas Van Zandt, being in the actual and direct receipt of the rent of the premises, and thus in possession by the permission of the trustee, had an interest or estate for life, as a *cestui que trust,* under the deed to Daniel L. Van Antwerp, to which, by virtue of the sheriff's sale, as it was procured and acquiesced in by Thomas Van Zandt, William J. Van Zandt acquired title, but that the sale, so far as it affected the interest of the plaintiffs, was fraudulent and void.

The bill further charged that William J. Van Zandt, being in the possession and enjoyment of the premises, as the purchaser of the life estate of Thomas Van Zandt therein, was bound in equity to protect the estates in remainder and in expectancy, depending on the termination of the life estate, to keep down any incumbrances existing on the premises, to pay off and satisfy all reasonable assessments and taxes thereon, and to save from sacrifice the several rights, interests, and estates of the plaintiffs ; that the sale to Packard, for the assessment, was fraudulently procured by William J. Van Zandt, for the purpose of cutting off the plaintiffs' rights ; and they insisted that it was a violation of his duty, and was fraudulent and void.

William J. Van Zandt put in his answer, without oath, in which he alledged that Thomas Van Zandt was weak and imbecile in intellect, very credulous and confiding in disposition, unstable in resolution, and easily to be imposed upon, very illiterate, and unaccustomed to, and unqualified for business ; and charged that the deed of trust was procured and obtained from him by deception and imposition, by misrepresenting its nature, contents, and effect, or other undue and unlawful influence or practices. The answer further alledged that Thomas Van Zandt, having been solicited by his sister and her husband to make a will, yielded to such solicitation, and they having undertaken to procure a will to be drawn, had the deed of trust prepared and exhibited to him as a will, and that he executed it under the belief that it was a will. The answer further sta-

ted that the defendant, immediately after receiving his deed from the sheriff, took possession of the premises, with the knowledge of the plaintiffs and Daniel L. Van Antwerp, and has held and claimed the same as owner in fee ever since ; that he had, with their knowledge, made large and valuable improvements upon the premises ; that he had also paid large assessments upon the premises, besides which he had paid " *over two hundred dollars for the repurchase and redemption of the premises sold on the assessment for widening Beaver-street, mentioned in the complainants' bill.*" The defendant also insisted that, after he had remained in the undisputed possession of the premises so long a time, the plaintiffs ought to be precluded from setting up the trust deed against his title, and he prayed the same benefit of these facts as if he had specially pleaded them in bar of the relief sought by the bill.

A replication to the answer having been filed, an order was made by this court in September, 1847, referring the cause to Orlando Meads, Esq. as a referee, to hear the proofs and allegations of the parties, and to determine the matters in controversy. The order provided that either party might bring the cause to a hearing upon the report of the referee, and a case to be settled in the manner provided in the order, or if no case should be made, then upon the report of the referee alone, to the end that such further order or decree might be made therein as should be just.

The cause was heard by the referee, and on the 26th of July, 1848, he made his report, wherein he found that the trust deed in the pleadings mentioned, executed by Thomas Van Zandt to Daniel L. Van Antwerp, was duly executed and delivered, and conveyed the premises to the grantee therein, in trust, for the uses and purposes therein specified, and that the several parties in interest in the said premises held their respective interests therein under and in conformity with the provisions of the deed. That the defendant, by his " re-purchase and redemption of the premises sold on the assessment for widening Beaver-street," mentioned in the bill and answer, acquired no title to the premises against the other parties in interest under

the trust deed, and that he should be required to release to the plaintiff, Burhans, as trustee, for the purposes and benefit of the trust, all the right, title, and interest acquired by him under the re-purchase and redemption.   That the defendant should be decreed to deliver over the possession of the premises to the plaintiff Burhans, as trustee.   That the right of the defendant to the possession, and the rents and profits, of the premises terminated at the death of Thomas Van Zandt, in April, 1842 ; and that since that day, the beneficial interest therein, subject to the trusts of the said deed, vested in Hannah Van Antwerp for her life.   That the defendant should be decreed to account for, and pay over to the trustee, the rents and profits of the premises since the death of Thomas Van Zandt, with interest thereon ; and that on such accounting he should be allowed the amount of all assessments and other charges which he had paid for permanent improvements and which were incurred previous to the death of Thomas Van Zandt, with the interest thereon from his death, and also all assessments, and other proper charges, which he had paid for the benefit, repair, and improvement of the premises, since the death of Thomas Van Zandt, together with the interest thereon ; and if such rents and profits should be insufficient to pay the amount so paid by the defendant for such assessment and other charges, then that the trustee should pay the deficiency, with interest, out of the first moneys received by him from the rents and profits of the premises.   That the defendant was entitled, under his deed from Stephen L. Van Antwerp, to the share or interest in the remainder, subject to the trust and equitable life estate of Hannah Van Antwerp, to which Stephen, under the trust deed, was entitled.   That a reference should be directed, to take an account upon these principles, and that the defendant should pay the plaintiffs' costs to be taxed.

Exceptions were taken by the defendants to the several parts of the referee's report, and the cause was brought to a hearing upon the report and exceptions, together with a case settled in pursuance of the provisions of the order of reference, containing the pleadings and evidence.   The evidence, so far as it is ma-

terial to the questions decided, is sufficiently noticed in the opinion of the court.

After the referee had made his report, the defendant William J. Van Zandt died, and on the 26th of October, 1848, the present defendants, who are his heirs and personal representatives, were substituted as defendants, in his place.

*John Van Buren*, for the plaintiffs.

*Samuel Stevens*, for the defendants.

*By the Court*, HARRIS, J.  A question was raised upon the argument, in respect to the effect to be given to the decisions of the referee upon matters of fact. On the one side, it was claimed that such decisions, like those of a jury, or referees, in an action at law, should only be disturbed, when clearly against the weight of evidence, or in violation of law. On the other side, it is insisted that the report of the referee is to be considered as having the same effect as the report of a master or the decision of a vice chancellor, upon a reference of any matter for hearing and decision. So far as it relates to this case, the question is of no great importance ; for I shall not have occasion, in the view I have taken of the questions involved, to differ essentially from the conclusions of the referee upon mere matters of evidence. I think, however, it is more in analogy with the principles which govern the practice in equity cases, to treat the decision of a referee, not like the verdict of a jury, conclusive upon questions of fact, unless palpable error is manifest ; but, like the report of a master, or a decision of a vice chancellor, upon any matter referred ; where, upon exceptions, or appeal, all questions decided, of fact as well as of law, were the subject of review. In the absence of any settled practice in this respect, I should be inclined to follow this analogy.

Nor do I deem it necessary to determine, in this case, the effect of the decree of the vice chancellor, dismissing the bill filed by William J. Van Zandt to set aside the trust deed executed by Thomas Van Zandt to Daniel L. Van Antwerp.

Irrespective of this question, and regarding the question of the validity of the deed as strictly *res nova*, I am inclined to think the deed should be established. It is evident that Thomas Van Zandt was a very simple, weak-minded man. Being without family, and having considerable property, it was not strange that his relatives should each make some exertions to secure to themselves what benefit they could from his estate. The most ready way to effect this end, would be to secure the possession of his person—a thing which otherwise, at least in his case, would not have been very desirable. Hence we find him alternately in the keeping of his sister, Mrs. Van Antwerp, and his brother, John Van Zandt. While living with his sister, the trust deed was obtained, which secured to her and her children the exclusive benefit of the property. While living with John, a judgment for an extravagant amount was recovered against him, upon an alledged indebtedness for board; upon which an execution was forthwith issued and the same property conveyed by the deed of trust sold. The object of these proceedings can not be doubted. Each party was striving to gain an advantage over the other; and in the strife, there is some reason to believe that each made use of unjustifiable means to effect their object. I very much doubt whether Thomas Van Zandt, when he executed the deed of trust, understood what it really was, and, on the other hand, there is considerable reason to believe that there was something wrong about the judgment recovered against him. But there is not, in my opinion, sufficient evidence in the case, to warrant a decree pronouncing either the deed or the judgment void for fraud; at least not as between the parties to this suit. Had the question arisen between Thomas Van Zandt and either the grantee in the deed or the plaintiff in the judgment, other considerations might have been involved.

In the further examination of this case, therefore, I shall assume the validity, as between these parties, both of the deed to Daniel L. Van Antwerp, and the judgment recovered by John Van Zandt. We are thus brought to the question, first, as to the effect of the sheriff's sale and conveyance of the premises to William J. Van Zandt, and then the effect of the sale to Pack-

ard, under the corporation assessment, and the "re-purchase and redemption" by William J. Van Zandt from him.

The deed executed by Thomas Van Zandt being valid, the entire legal interest in the premises was vested in his grantee; and if he continued in possession afterwards, his possession was not that of an owner, but a tenant of his grantee. From the time he executed the deed until he surrendered the possession to William J. Van Zandt, he must be regarded as holding the premises in subservieney to his grantee. Nothing short of an explicit disclaimer of such relation, and a notorious assertion of right in himself, would be sufficient to change the character of his possession, and render it adverse. (*Jackson* v. *Burton,* 1 *Wend.* 341. *Zeller's Lessee* v. *Eckert,* 4 *Howard's Rep. S. C. U. S.* 289.) It is not pretended that there was any such disavowal of Van Antwerp's title, or assertion of an adverse right, by Thomas Van Zandt while he continued in possession. Nor do I think the purchase of his interest at the sheriff's sale, by William J. Van Zandt, and the subsequent entry under such purchase, would, of itself, constitute such an adverse holding as to lay the foundation for the operation of the statute of limitations. It is true, that this is a question of fact, which, upon a trial at law, might properly be submitted to a jury; but I am inclined to think that, in such a case, a jury should be instructed that before they could properly find an adverse possession they should be satisfied, from some legal evidence, that there was at least an intention to hold the possession in defiance of the title claimed under the trust deed. This evidence we have in the bill filed by William J. Van Zandt in 1828, to set aside the trust deed. He then, if not before, asserted his own absolute title to the premises. He then explicitly disclaimed holding under any title subordinate to that under which the plaintiffs now claim. From that time, at least, there can be no doubt of the adverse character of his possession. The statute of limitations then, if not before, began to operate. If, after that, those claiming under the deed to Van Antwerp had allowed the period limited by law to elapse, without asserting their title, such delay must have been held an absolute bar to any subsequent action.

Burhans *v.* Van Zandt.

From the time, therefore, that Wm. J. Van Zandt openly asserted his title to the premises, in hostility to the title claimed under the trust deed, having already acquired the possession under his purchase at the sheriff's sale, whatever may have been the legal character of his possession before, it then became an adverse possession. No matter though he knew his title was bad. Being in actual possession, it needed only an adverse claim, however wrongful it may have been, and however well he may have known that it was unfounded, to render that possession adverse. It is the very office of the statute of limitations to mature a possession, in itself wrongful, if accompanied by even a pretence of title, into a legal right. (*Humbert* v. *Trinity Church*, 24 *Wend.* 587. *Northrop* v. *Wright*, 7 *Hill*, 476.) These considerations are suggested, not with a view to the application of the statutory bar to the plaintiff's remedy, but that we may the better understand the relation of the parties to each other and the duty of William J. Van Zandt to the plaintiff, if any he owed, in respect to outstanding charges and incumbrances.

Before considering the effect of the assessment sale, it may be proper to notice the conveyance from Stephen L. Van Antwerp to William J. Van Zandt, of his right, title and interest in the premises; as it is supposed by the plaintiff's counsel to have some bearing upon the relation in which the parties stood to each other, after that conveyance. I admit, to its fullest extent, the doctrine contained in the authorities cited by the plaintiff's counsel, upon this branch of the case. Where two or more persons have a joint claim to property, the community of their interests creates a mutual obligation that neither shall do any thing to the prejudice of the other. An expenditure by one, upon the subject of their common interest, enures to the benefit of all; and, on the other hand, all are bound to contribute towards that expenditure. Neither will be permitted, without the consent of the others, to buy in an outstanding title, and appropriate the whole subject to himself, and thus undermine and oust his companion. "This," says Chancellor Kent, "would be repugnant to a sense of refined and accurate justice. It

would be immoral, because it would be against the reciprocal obligation to do nothing to the prejudice of each other's equal claim, which the relationship of the parties created. Community of interest produces a community of duty, and there is no real difference, on the ground of policy and justice, whether one co-tenant buys up an outstanding incumbrance, or an adverse title, to disseize and expel his co-tenant." ( *Van Horne* v. *Fonda,* 5 *John. Ch.* 388.) " It is a general principle," says the same eminent jurist, in *Holridge* v. *Gillespie,* (2 *Id.* 30,) " that if a mortgagee, executor, trustee, *tenant for life,* &c. who have a limited interest, gets an advantage by being in possession, or ' behind the back' of the party interested in the subject, he shall not retain the same for his own benefit, but hold it in trust.' But do the plaintiffs bring their case within this principle ? We have already seen that William J. Van Zandt openly and notoriously disavowed all community of interest with those who claimed under the trust deed. He asserted his own exclusive ownership of the property. Under these circumstances, it can hardly be inferred that when he took the release from Stephen L. Van Antwerp he intended to abandon his claim of absolute title, and to admit that he held in subordination to the title created by the trust deed. If he did not so intend, then he did not, by the mere act of taking that release, change the character of his claim. For, a party in possession of land, claiming it as his own, under color of title in fee, is permitted to quiet such title, by obtaining a conveyance of an adverse claim, without abandoning his previous claim of title. (*Northrop* v. *Wright, above cited.*) I cannot therefore regard the release executed by Stephen L. Van Antwerp as having any legitimate bearing upon the question under consideration.

What then was the effect of the assessment sale by the corporation of Albany to Packard, and the conveyance by assignment from Packard to William J. Van Zandt ? The bill alledges that Wm. J. Van Zandt having acquired the interest of Thomas Van Zandt in the premises by virtue of his sheriff's deed, and being in possession as tenant for the life of Thomas Van Zandt, was bound in equity to protect the plaintiff's estates in remain-

Burhans v. Van Zandt.

der and reversion, and that, disregarding this obligation, he had procured the premises to be sold to Packard for the assessment, and, when the time for redemption had expired, had taken a conveyance from Packard. It is insisted that the sale was in fact made by the corporation to Van Zandt ; that his object was to cut off the plaintiffs' rights, and that, as he was in possession and vested with the life estate of Thomas Van Zandt, the purchase by him was a violation of his duty to the plaintiffs, and is, therefore, fraudulent and void.

The answer alledges that William J. Van Zandt took possession of the premises, not as tenant for the life of Thomas Van Zandt, but claiming to hold in fee, and that it was known to the plaintiffs that he so claimed. It also states that Daniel L. Van Antwerp, and also the plaintiffs, knew of the assessment for widening Beaver-street, and of the sale by the corporation for the non-payment of that assessment, and never offered to redeem, or claimed any right to redeem. It further states that, believing he had a perfect title in fee, he had, since the conveyance of the premises to him by the sheriff, with the knowledge of Daniel L. Van Antwerp and the plaintiffs, and without their denying or questioning his title, made valuable improvements upon the premises, and had paid large assessments chargeable thereon ; and besides this, had *"paid over the sum of* $200 *for the re-purchase and redemption of the premises sold on the as-,sessment for widening Beaver-street, mentioned in the bill."* It was insisted by the plaintiffs' counsel, upon the argument, that this statement in the answer was to be regarded as an admission by William J. Van Zandt, that he had paid the amount of the assessment to Packard, not as a purchase of his title, but for the extinguishment of a charge upon the premises. It is true, that the pleader, in drawing the answer, seems chiefly to have relied upon the sheriff's deed. Hence we find him insisting that "the defendant ought not to be required by proof to substantiate the validity of the said judgment and sale, or of his title to the said premises, otherwise than by the said judgment, execution, sale and deed from the said sheriff." But I do not think it was intended to waive any rights the defendant had

acquired under the conveyance from Packard. The bill had alledged the sale to Packard, and the transfer by Packard to the defendant. The answer, assuming these facts, and apparently with a view to show the defendant's confidence in his own title, and the acquiescence of the plaintiffs in his ownership, states various expenditures made by the defendant on account of the premises, and then adds the payment of $200, for the purpose of re-acquiring the title which, by the assessment sale, had become vested in Packard, as " mentioned in the complainants' bill." It was a *re-purchase* as well as a *redemption*. The money was paid for the purpose of re-vesting in himself, the title, which, as he alledged, he had first acquired at the sheriff's sale. This, I think, the fair intendment of the pleader in the use of the terms " re-purchase and redemption."

It may also be observed, while referring to the pleadings, that the charges in the bill, in relation to the manner of procuring the assessment sale, are not answered at all. But, as the plaintiffs had waived an answer upon oath, the general traverse, at the conclusion, was sufficient to put these allegations in issue. And, as no proof was given by the plaintiffs in support of these allegations and charges, and the declaration of sale executed by the corporation to Packard, and the assignment by Packard to William J. Van Zandt, were produced by the defendants, it must be assumed that Packard purchased in good faith, and on his own account, and that Van Zandt also purchased of Packard in like good faith. The question then returns, how did this purchase affect the rights of the parties?

The corporation assessment was an incumbrance upon the premises, superior to the rights of either party. In its legal effect, it may be compared to a mortgage executed by Thomas Van Zandt prior to the execution of the trust deed. The validity of the assessment, and the regularity of the proceedings, not being questioned, it can not, I think, be doubted, that Packard, after the period allowed for redemption had expired, acquired an indefeasible title to the premises, for the term specified in the declaration of sale. Had William J. Van Zandt the right to acquire that title, for his own exclusive benefit? If he

Burhans *v.* Van Zandt.

had not, it must be because he owed some duty to the plaintiffs in respect to that assessment, which would be violated by allowing him thus to avail himself of it, to fortify his title.   Let it be conceded, for the present, that, while he was in possession, claiming adversely to all the world, he had, in fact, as the plaintiffs insist he had, an estate for the life of Thomas Van Zandt.   As a tenant for life, he would have been bound to keep down the interest upon the incumbrance, out of the rents and profits, but he was not bound to extinguish the incumbrance itself.   If he had chosen, rather than allow the premises to be sold, to pay off the incumbrance, such payment would have been an equitable charge upon the premises:   In that case, however, he would not have been entitled to interest during the continuance of his life estate.   (4 *Kent's Com.* 74, 5*th ed.*)   But he violated no duty, in allowing the premises to be sold.   The sale having taken place, and the title having been perfected under the sale, he had the same right as any other person to purchase of the owner.   Such purchase would enure to his exclusive benefit, or to the benefit of himself and those claiming the reversion, according to circumstances.   If he acquired his possesssion in such a manner as to owe allegiance to the reversioners; he could not set up an outstanding title thus purchased in by him, to defeat their rights.   A possession acquired in subserviency to their title, could not be defended, as against them, by asserting a new title subsequently acquired.   The general principle is, that one in possession may purchase in an outstanding title for the purpose of strengthening his own.   The only qualification of this rule, of which I am aware, is that to which I have already adverted, that the possession of the purchaser must not have been taken under circumstances which preclude him from disputing the title of the party claiming.   (*See Phelan and wife* v. *Kelly,* 25 *Wend.* 389.)   Thus, where one enters under a contract of purchase; or a license, or a lease; or as a tenant in common, he is held to be estopped from controverting the title under which he entered:   The qualification of the general principle stated, has its foundation in the law of estoppel, which will not allow a

Burhans *v.* Van Zandt.

man to do what, in honesty and good conscience, he ought not to do.

But we have already seen that William J. Van Zandt entered under circumstances which constituted his possession, in its very inception, an adverse possession. His claim, from the beginning, was hostile to that of the plaintiffs. He entered, not in subordination to their right, but in defiance of it. There was nothing in the circumstances of the case to impose upon him any obligation to protect the plaintiffs' title, or create a fiduciary relation between them. What principle of law, then, what rule of justice is violated by allowing him to fortify his claim to the property by purchasing an outstanding title held by a stranger? That Packard could have enforced his title against the plaintiffs as well as against William J. Van Zandt, will not be denied. I have considered as well, and as maturely as I was able, the arguments of the very distinguished counsel who presented this case on behalf of the plaintiff, and I have been unable to discover any principle which would not allow William J. Van Zandt, first to acquire, and then to enforce and enjoy, the title of Packard to the same extent, as Packard himself, or any other purchaser, might have enforced and enjoyed it. If I am right in this conclusion, it follows that the defendants have succeeded in establishing, not only an adverse claim, but an adverse title, which must prevail against the plaintiffs' rights.

It is, perhaps, to be regretted that the disposition of so valuable a property should be determined by a legal advantage secured by one of the parties in acquiring the title perfected under an assessment sale, for a comparatively trifling amount. It is still more to be regretted, that the parties should not at the first have been contented with that equal division of the estate of their imbecile kinsman, which natural justice would have suggested. But instead of this, the parties seem to have been engaged in a protracted struggle, each to gain a preference over the other, in the division of this inheritance. And now, if the contest has resulted in the plaintiffs' defeat, through the operation of the assessment sale, that result must be attributed, not to any fault in the law, but to their own neglect, in allowing an

adverse title to be perfected against them, when they might, by the payment of the assessment before the sale, or the redemption of the property within the prescribed period afterwards, have protected the rights they had acquired under the trust deed.

The plaintiffs' bill must be dismissed ; but under the peculiar circumstances of the case, to which 1 have already sufficiently adverted, I think it should be without costs, also without prejudice to the plaintiffs' remedy at law.

Decree accordingly.

