THOMAS G. WHITE, Surviving Assignee, Respondent, v. THE TRUSTEES OF THE FIRST SOCIETY OF THE METHODIST EPISCOPAL CHURCH, &c., Appellants.

(GENERAL TERM, FOURTH DEPARTMENT, JANUARY, 1871.)

A contract for building a church edifice, at not less than a specified cost, provided for paying the builders by assignment of the subscription list to them, with power to collect and discharge the amounts subscribed, and also by permitting them to sell the slips at auction, with the right to retain such as should be unsold, to be sold or locked up at their election. —*Held*, that the builders had merely a power to dispose of the slips retained, and no title in or to the edifice or premises.

And the church having, against the objection of the builders, removed and destroyed the pews so retained.—*Held* further, that the cause of action on account thereof, arose at the time of the removal, &c., and was barred by the statute (Code, § 97) after the expiration of ten years from that time.

It seems that if the church trustees being called upon, to do so in the reasonable exercise of their duty to the corporation and congregation, on account of delapidation and necessity for repair, took out the floors and slips, and other fixtures, and reconstructed the inside of the edifice, the plaintiff (who was the assignee of the original contractors), thereupon

lost his title to the pews, and had no remedy against the church with regard to other pews put in to replace the old.

THIS was an appeal from a judgment in favor of the defendant after trial at Special Term.

The action was brought to obtain payment of certain sums alleged to be unpaid upon a contract for the erection of a church building, and for certain other relief as stated in the opinion of the court. The defendant, with other defences, pleaded the statute of limitations; also set up that the action was barred by a former suit. It appeared that the defendants was incorporated as a religious corporation, under the name of the trustees of the "First Society of the Methodist Episcopal Church, in the village of Syracuse, in the county of Onondaga," on the 4th of April, 1832, under the "Act to provide for the incorporation of religious societies," passed April 5th, 1813, and the acts amendatory thereof; and that in April, 1835, the defendant by its committee duly empowered, entered into a contract with the plaintiff's assignor to erect a church building, as follows, viz. :

"Articles of agreement made this 14th day of August, 1835, between Hiram Judson, Luther Palmer and C. Tyler Longstreet, building committee of the Methodist Episcopal Church of Syracuse, Onondaga County, of the first part and Peleg Marshall (builder), and Luther Marsh his security of the second part ; witnesseth.

"1st. The parties of the first part shall furnish and designate a site on which to erect a Methodist Episcopal Church in said village to be called according to their direction.

"2d. The said parties of first part, are immediately to assign to said parties of the second part, the subscription in their hands for the building of the said church, with full power to collect, receive and discharge the same.

"3d. The said parties of the first part will (if required), indorse for the said parties of the second part a note of hand to aid in building said church in an amount to $1,000, and continue the same until the general sale of slips of said church.

"4th. The said parties of the first part are to permit the said parties of the second part, to sell the slips on the first floor above the basement of said church (at public auction or private sale), to pay for the erection thereof. And after the sale of said slips at public auction, which will take place on or before the first Monday of April next and the dedication of said church, if any of the slips on said floor remain unsold, the said unsold slips may be retained by said parties of the second part and be respectively sold or locked up as they may think advisable. *But the slips sold shall be in accordance with the subscription above alluded to.* And with the above exception, the church itself after such public sale, shall be in the possession and under the direction of the trustees of the Methodist Episcopal Church of said village agreeably to the rules and regulations of that religious sect."

Here follow certain unimportant details as to time, style and manner of construction, &c.

The plaintiff claimed the right to several pews, after fulfillment of the contract as pews unsold at auction. It also appeared that after completion of the building, the defendant remodeled the interior of its church, and tore out the old and put in new slips. The work of remodeling commenced in the fall of 1856, and was completed in June, 1857; that the money for these repairs and improvements was, before the same were made, raised by the defendant upon mortgage of the church lot and building, and the work paid for therewith; and that afterward the money to take up the mortgage was raised by general subscription, and the same was paid and satisfied. It also appeared that the places of the new pews or slips were substantially the same, and in the same order, except some three or four of them, but that they were differently numbered.

The defendant gave in evidence the record of a judgment in the Supreme Court, in which the plaintiff and one Marsh, his deceased co-assignee, were plaintiffs, and the defendants herein were defendants; being an action for tearing out the pews as originally built, and in which judgment was rendered

White *v.* The Trustees of the First Society of the M. E. Church, &c.

for the defendants, and the defendants' counsel insisted that it was a bar to this action. The court held that it was not a bar. The plaintiff showed service of the summons on the 26th of September, 1867, in this action, and the filing of a *lis pendens* August 7, 1867. The action was tried only with regard to the issues made upon the statute of limitations and the bar of the former suit, the other issues being reserved.

The court found, as matter of fact, that the suit was commenced September 26, 1867, and that ten years had elapsed after the cause of action accrued before its commencement; and found, as matter of law, that the action was barred by the statute of limitations, and that the complaint should be, for that reason, dismissed, and ordered judgment for defendant, with costs. The plaintiff duly excepted to the decisions and findings of the court, and appealed from the judgment entered.

*C. Forman* and *C. B. Sedgwick,* for the appellant.

*H. Burdick,* for the respondent.

Present—MULLIN, P. J., JOHNSON and TALCOTT, JJ.

By the Court — JOHNSON, J. The only question determined by the court at Special Term was, that the action was barred by the statute of limitations, and judgment was ordered for the defendant on that ground alone. One other question was tried, to wit, whether the plaintiff's right of action was not also barred by a former action and judgment between the same parties. But the judge, upon the trial, ruled and held that the former action and judgment were not a bar to this action, and disposed of the action solely upon the question of the statute of limitations. The action is brought to obtain equitable relief. The relief demanded is, that the amount due and unpaid upon a certain contract for the erection of a church edifice for the defendant may be ascertained and declared, and the defendant decreed to pay the same to the plaintiff as

surviving assignee of the contract, and that the same may be adjudged and declared an equitable lien and charge upon said edifice and premises, and that the same may be decreed to be sold for the payment and satisfaction of the amount so ascertained to be due and unpaid; or, in the alternative, that the defendant be decreed to convey to the plaintiff a number of pews in the reconstructed church edifice equal to the number which belonged to the plaintiff on the first of October, 1856, which were then torn down by the defendant, and as eligibly situated in said building as those were before being so torn down and removed.

The provisions of the Revised Statutes in regard to the times of commencing actions were repealed by the Code, except in special cases. By section 97 of the Code, " an action for relief, not hereinbefore provided for, must be commenced within ten years after the cause of action shall have accrued." This action is for a species of relief not before provided for by the Code. This provision of section 97 of the Code, is the same in substance with the provisions of the Revised Statutes. (2 R. S., 301, § 52.) The question is, when did the cause of action for this relief accrue, if it ever accrued? The action was commenced September 26th, 1867. The defendant in the fall of 1856, tore out the entire inside of the church edifice, and reconstructed it, putting in new floors, new pews, and new pulpit. This work was completed in May or June, 1857. The plaintiff's rights rested wholly in the contract under which the church edifice was constructed in 1835. By that contract, the defendant did not undertake or agree to pay the parties agreeing to build and complete the edifice, any sum whatever, nor is it specified anywhere in the agreement, what the amount of compensation for erecting and completing the building should be. It was to cost, and be worth when completed, not less than the sum of $6,200. But there is nothing in the terms of the contract to show that this was to be the measure of the builder's compensation. It was provided by the contract, that the defendant's building committee should assign to the contractors the subscription

in their hands for the building of said church, with full power to collect, receive, and discharge the same. It was also further provided, that the defendant should permit said builders, " to sell the slips on the first floor above the basement of said church at public auction, or private sale, to pay for the erection thereof." The sale at public auction was to take place on or before the first Monday of April, 1836, and before the dedication of the church. It was further provided, that in case any of said slips remained after such public auction, unsold, such slips might be retained by said builders, "and be respectively sold or locked up as they may think advisable." Looking at all the provisions of the contract, the true construction of it is, that the builders were to take the subscription and get whatever they might from it, and sell the pews or slips, and take the entire avails of such sales for their compensation for building. They took upon themselves the risk of obtaining enough in this way to compensate them. In other words, they agreed to build and finish the church, according to the plans, which should cost and be of the value specified, and take as their full compensation the subscription list, and the right to sell the slips, and have all the avails. This gave them no title to the church edifice, or the premises. The church and premises belonged to the corporation. It was, in my opinion, a mere power to sell and take the proceeds. It did not give them any interest in the estate. They had no authority to convey the title to the slips sold by them. That was necessarily done by the trustees of the corporation, who alone had the title. They had by the contract the right to sell for such price, and on such terms as they might see fit, and to have all the avails of all the sales. But this right was of course limited to selling the slips they undertook to place in the edifice, and did not extend to slips which the corporation might put in at its own expense by way of repair, or reconstruction, twenty years afterward. As long as any of the slips put in by them remained unsold, they had by their contract the right to dispose of them respectively, or retain possession of them. And whenever the defendant, by its

trustees, did any act to interfere with and destroy this right, at that moment the right of action accrued to recover damages for the violation or destruction of the right. And if the rights the builders acquired upon the completion of the building continued unimpaired, until the fall of 1856, the tearing out, and removing the slips, and the whole interior of the edifice, was such a violation as gave to the plaintiff then his right of action. This was more than ten years before the commencement of this action, and consequently it is barred by the statute.

This disposes of the case, and leads to an affirmance of the judgment. I do not see, however, why the former action and judgment were not a complete bar to this action. That was an action in the nature of an action on the case, to recover damages of the defendant, for the wrongful taking away and removal of the slips remaining unsold in the fall of 1856, without the plaintiff's consent. In that action the plaintiff was defeated, and the defendant had judgment. I do not see why it did not necessarily involve the plaintiff's rights to those slips, and the defendant's right to remove them without the consent of the plaintiff, and reconstruct their church edifice. Besides, if the fact was, that in 1856, the church edifice had become so dilapidated and out of repair, that the trustees were called upon in the reasonable exercise of their duty to the corporation, and the congregation attached thereto, to take out the floors, slips, and other fixtures inside the church, and reconstruct the edifice inside, the plaintiff lost his rights thereby, and is without remedy. The contract must have a reasonable interpretation, and it cannot be supposed that it was within the intention of the parties on either side when the contract was entered into, that the builders might hold the slips, and lock them up indefinitely without selling, and deprive the corporation and the congregation of their use for all time. The true construction of this part of the agreement, I think, is that such slips as were not sold at the public auction provided for, might be sold at private sale afterward, to respectable occupants, or locked up until they could

be sold to reasonable advantage. In any view of the case, however, it is quite certain that under the contract, the builders acquired no greater or more permanent rights, than the pew holders acquired to the slips purchased by them from the builders, after their purchase, and a conveyance to them in pursuance thereof, by the trustees of the corporation. This right of the pew holders has always been held to be a qualified estate, a mere usufruct, subject to the more general right of the corporation in the soil and freehold. It is a right to occupy the pew purchased, so long as it remains, or to the limit of the term of the purchase, but is subject, nevertheless, to the superior right of the corporation to make necessary changes and repairs. When these are necessary, and the pew is removed the title is gone, and without remedy to the pew holder. (*Voorhees* v. *Presbyterian Church of Amsterdam*, 17 Barb., 103, and cases there cited.) In that case, Mr. Justice HAND, with his accustomed diligence, has collected most of the cases on that subject in this State and Massachusetts. This necessarily results from the kind of property to which the right of the pew holder attaches, and the nature and character of its use. Considerations of the prosperity and welfare of religious bodies, and the general good of society, enter largely into the rule.

Judgment affirmed.