## HILTON v. BENDER.

*Title — invalid assessment sale sufficient to sustain title by adverse possession — when tenant may acquire against landlord — agent acquiring in fraud of principal.*

Defendant claimed title under a deed given upon an assessment sale to her grantor. *Held,* that even though such deed and sale were without authority they were sufficient to render effectual adverse possession commenced thereunder.

The fact that defendant's grantor was tenant of the owner at the time of the assessment sale *held* not to preclude him from acquiring title under such sale. A tenant may protect his possession against his landlord by showing that the title of the latter has expired or been extinguished. *Held,* also, that even if such grantor was acting as the owner's agent at the time of the sale, the title acquired by him could not be impeached in the hands of a *bona fide* purchaser for value.

MOTION for a new trial upon a case, and exceptions ordered to be heard in the first instance at the general term. The action was brought in Albany county by Richard Hilton against Christopher W. Bender and Maria Bender, his wife, and four others, to recover the undivided one-half of a piece of land situated in the city of Albany. It was claimed upon the part of the plaintiff that one James Hilton was, in 1836, seized of the premises mentioned; that he made a last will, devising all his real estate to the plaintiff and one Robert Hilton and wife, in common ; that after testator's death, in 1839, the defendant, Maria Bender, acquired the interest devised to Robert Hilton and wife, and became a tenant in common with plaintiff. The defendants claimed the entire title to be in the defendant Maria Bender, upon the ground of adverse possession for the period of thirty-five years and upwards by said Maria and her grantor, John Hilton, who purchased the premises at an assessment sale in 1836. Such other facts as are material are noticed in the opinion.

*Marcus T. Hun*, for plaintiff.

*W. S. Paddock* and *Amasa J. Parker*, for defendants.

BOCKES, J. It may perhaps be questionable whether title to the premises was shown in plaintiff's testator, James Hilton. No deed to him was produced, nor was he in possession claiming title at the time of his decease. He was shown to have been in possession several years prior to his death, claiming to own the premises, and exercising acts of ownership over them. But he was out of possession at the time of his death, the premises then being occupied by John Hilton, who, however, claimed as his tenant, and had made substantial and valuable improvements on the lot. The admission of tenancy by John, as proved, made no disclosure of its conditions or of the duration of the tenancy.

But without determining this point, the evidence established, as I think, an adverse possession by Mrs. Bender, and her predecessors in occupation, which barred the plaintiff's claim. In March, 1836, John Hilton, from whom Mrs. Bender claimed title through mesne conveyances, obtained a deed of the premises, purporting to give him title for one thousand years, under an assessment sale. This was prior to the date of the will even, and a considerable

period prior to the decease of the plaintiff's testator. Following this to the time of the trial, a period of over thirty-five years, the premises were occupied by persons claiming to hold and holding under that title. It appears that John Hilton, the purchaser on the assessment sale and grantee in that deed, which was duly acknowledged and was recorded in 1838, held under it until 1852, when he conveyed to Barent P. Staats, and Stephen Paddock, Jr., who, in 1858, conveyed to William S. Paddock, and he conveyed to the defendant, Mrs. Bender. Here then was an adverse holding of over thirty-five years prior to the commencement of the action. Twenty years were sufficient to bar the right of entry made on the true title. But it is said, the assessment sale and deed were without authority of law and void. It was not necessary that the adverse possession, in order to be effectual, should commence under a valid deed. It was held in *Finlay* v. *Cook*, 54 Barb. 9, that a comptroller's deed, even though that officer had no authority to sell, was a sufficient foundation for an adverse possession. It is there said, the "deed was fair upon its face. It contained no evidence of a want of authority by the comptroller to execute it. As it purported to be executed under an authority, it gave color of title to the grantee, although the pretended authority recited upon its face did not in fact exist;" and it is added that possession and claim under such deed by the grantee and those claiming under him, were presumed to have been in good faith, and therefore adverse to the title of the former owner, "and if continued for the period of twenty years, ripened into a perfect title." *Jackson* v. *Newton*, 18 Johns. 355 ; *Northrop* v. *Wright*, 7 Hill, 476 ; *Burhans* v. *Van Zandt*, 7 Barb. 101 ; *Overing* v. *Russell*, 32 id. 263. Now it seems that John Hilton's possession and claim of title, under the assessment sale, was hostile to that under which the plaintiff claims from the time he received his deed. His hostile attitude in regard to the title was notorious; certainly his claim of title and holding under this deed was known to those interested to defeat it from about the time of the testator's death, as one witness states that when the will was read, "he stepped forward and presented this deed ; it was common talk in the family," and the premises continued thereafter to be held adversely to the time of the trial.

But it is urged that John Hilton, being tenant, could not acquire hostile title against his landlord. The answer to this is that the hostile title originated with the purchase on the assessment sale.

It was not the buying in by the tenant of an existing outstanding title. The sale, if valid, originated a new title, which superseded the previous one, and on its consummation by deed, a hostile right sprung into existence. Such right a tenant may acquire, and it may be interposed by him against the landlord's claim. A tenant may protect his possession against his landlord by showing that the title of the latter has expired or been extinguished. As was said in *Jackson* v. *Rowland*, 6 Wend. 666–671, "A tenant cannot dispute the title of the landlord, so long as it remains as it was at the time the tenancy commenced, but he may show that the title under which he entered has expired, or has been extinguished." Nor would it help the plaintiff's case if he had established the fact (which I think he failed to do) that John Hilton obtained his title while agent of the testator in regard to the premises. Even if such title and all benefits and advantages growing out of it could have been claimed by the latter, and could have been obtained by him or by his devisees by proceedings in equity, no steps were ever taken having that object in view; and the property passed under conveyance, for aught that appears to the contrary, to *bona fide* holders. Under such circumstances a *bona fide* purchaser for a valuable consideration would take the property free from any claim of the testator, and of all persons claiming under him.

It is further insisted that Mrs. Bender's holding was that of a co-tenant with the plaintiff, and therefore that she could not acquire title as against the latter. But Mrs. Bender did not enter as co-tenant. She entered as purchaser under hostile title of over twenty-five years' standing, and asserted her right to possession thereunder, never claiming as co-tenant with the plaintiff or acknowledging any right in him, or claim by him to the property.

Thus it seems, that all the elements of an adverse holding existed in this case, with a perfect right on the part of the defendants to insist upon it as a defense. Here was an actual and uninterrupted possession under claim and color of title for a period of over thirty-five years. This was sufficient to bar the plaintiff's right of entry, and must be held to afford a perfect answer to the action.

I am quite of the opinion also that the assessment deed was effectual as a muniment of title. As an ancient deed it answered the requirements of a valid conveyance of the premises embraced in it. It was in due form, and purported to have been executed pur-

suant to lawful authority ; and there had been an undisturbed possession under it for over a third of a century. So of itself it furnished presumptive evidence of the truth of its recitals. 1 Greenl. Ev., §§ 20, 21 ; *Inhab. of Stockbridge* v. *Inhab. of West Stockbridge,* 14 Mass. 257; *Doe* v. *Campbell,* 10 Johns. 475; *Jackson* v. *Russell,* 4 Wend. 543 ; *Wheeler* v. *Billings,* 38 N. Y. 264; Cow. & Hill's Notes, note, 311, 882. But this point need not be determined. I am of the opinion that the case was properly disposed of on the point above considered.

Motion for new trial is denied and judgment ordered for the defendants, with costs.

*Motion denied.*