(139 App. Div. 651.)

MONNOT et al. v. RUDD.

(Supreme Court, Appellate Division, First Department. July 7, 1910.)

1. ADVERSE POSSESSION (§ 85*)—HOSTILITY—EVIDENCE—SUFFICIENCY.

While, standing alone, adverse entry of land may be presumed from mere entry and occupation, the presumption does not arise where a judgment has shortly before been rendered awarding possession to the record owner.

[Ed. Note.—For other cases, see Adverse Possession, Dec. Dig. § 85.*]

2. ADVERSE POSSESSION (§ 60*)—ESSENTIALS.

Where the original possession of land is in privity with the rightful owner's title, an assertion of title in the holder brought home to the other party is indispensable to enable such holder to avail himself of the statute of limitations.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 282–314; Dec. Dig. § 60.*]

3. EJECTMENT (§ 117*)—JUDGMENT—EFFECT.

If plaintiff in ejectment relied on a referee's deed in partition, judgment for him established his title and right to possession.

[Ed. Note.—For other cases, see Ejectment, Dec. Dig. § 117.*]

4. ADVERSE POSSESSION (§ 60*)—HOSTILITY.

The character of one's hostile entry of land is not changed by his subsequent acquisition of a tax lease, for one in possession may acquire adverse title without changing the character of his possession.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 282–314; Dec. Dig. § 60.*]

5. ADVERSE POSSESSION · (§ 60*)—HOSTILITY.

Acceptance by a tax lessee of money paid by the owner to redeem land is a recognition of the owner's title, precluding possession hostile to the owner.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. § 287; Dec. Dig. § 60.*]

Ingraham, P. J., dissenting.

Appeal from Trial Term, New York County.

Ejectment by Louise Emilie Monnot and others against Susan H. Rudd. From a judgment for defendant, and from an order refusing a new trial, plaintiffs appeal. Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, MILLER, and DOWLING, JJ.

Leslie C. Ferguson, for appellants.

Marshall B. Clarke, for respondent.

MILLER, J. This is an ejectment action brought by the widow and heirs of John B. Monnot, deceased, against one of the heirs and the grantee of the other heirs of Joseph Husson, deceased, and involves the title to a triangular piece of four acres of land, surrounded except along the highway by a farm, which has been in the possession of the Husson family since before 1874. On the 19th of March, 1874, a judgment was entered in an ejectment action, brought by said Monnot against said Husson. Although the judgment roll in that action is of prime importance in determining the question presented on

this appeal, instead of printing the judgment roll, the parties to the appeal contented themselves with a stipulation to the effect that, by the judgment, it was duly adjudged that the plaintiff recover of the defendant said property, i. e., said triangular piece, and the possession of the same and of every part thereof. We have no means of knowing upon what the plaintiff based his right to the possession of the property, unless it be the fact that, in this suit, it appears that the said Monnot acquired title by a deed to him, made by a referee in partition in 1868.

It is not pretended that the said Joseph Husson had any record title to the premises in dispute. Said premises were situated close to Husson's house and between it and the highway. There was a stable and carriage house upon it, and he kept his horses and carriages therein, using the premises to drive over to reach the highway. Some of it was used as a part of the lawn surrounding his house. He had flower beds upon it, cut grass from it, and generally used it as an owner customarily uses his property. After the judgment in the ejectment suit, the sheriff put Monnot in possession. Monnot built a picket fence partly around his property so as to exclude Husson therefrom. Shortly thereafter, Monnot died, and his family, these plaintiffs, removed to France, where they have since remained. Soon thereafter, Husson tore down the picket fence, re-entered the premises, and has since used them continuously in the manner indicated. It is said in the respondent's brief that Husson appealed from the judgment in the ejectment suit and obtained a stay of execution from the judgment for costs. I find no proof of that, however, in the record.

The defendant claims title by adverse possession under sections 371 and 372 of the Code of Civil Procedure. The trial court submitted to the jury the question whether the defendant and her ancestor had been in continued occupation of the premises under a claim of title, exclusive of any other right, for more than 20 years, and whether the premises had been protected by a substantial inclosure, or had been usually cultivated or improved. The jury found for the defendant.

I shall assume that there was sufficient evidence to justify the jury in finding that the defendant and her ancestor have continuously occupied the premises in dispute for more than 20 years; that the inclosure of the entire premises may be deemed an inclosure of the triangular piece; and that the use to which it was put may be deemed a cultivation or improvement within the meaning of the statute. The question is whether there was any evidence that such occupation was under a claim of title, exclusive of any other right.

There is no evidence in this record from which it can be found that the said entry or the continued occupation thereafter was adverse, except the bare fact of such entry and occupation. Standing alone, that would doubtless be sufficient to raise a presumption of adverse entry. See Barnes v. Light, 116 N. Y. 34, 22 N. E. 441. Does it raise such a presumption when coupled with the fact that a judgment had shortly before been rendered, awarding possession to the record owner?

There can be no doubt .that, where the original possession is in privity with the title of the rightful owner, an assertion of title in the holder, brought home to the other party, is indispensable to enable such holder to avail himself of the statute of limitations. Jackson v. Burton, 1 Wend. 341; Burhans v. Van Zandt, 7 Barb. 91; Jackson v. Sternberg, 1 Johns. Cas. 153; Zeller v. Eckert, 45 U. S. 289, 11 L. Ed. 979. In Root v. Woolworth, 150 U. S. 401, 14 Sup. Ct. 136, 37 L. Ed. 1123, it was said that the re-entry by one against whom a decree had been rendered, adjudging that he had no right, title, or interest in the property, would be presumed to be in subordination to the title established by the decree, and that adverse possession could not be asserted without bringing express notice to the owner of that title, citing the foregoing and other cases. No doubt that was unnecessary to the decision of that case, as the statute of limitations had not run after the re-entry asserted. It can readily be seen that a possession in privity with the title of the rightful owner could not be rendered adverse short of express notice to such owner. The question here is as to the character of the original entry. In the absence of any evidence on the subject, is such entry to be deemed in subordination or in hostility to the rights established by the judgment in the ejectment suit? We should be aided somewhat in the consideration of that question if we knew upon what the plaintiff in that suit based his right to possession. I think, however, it may fairly be inferred that such right was based on the deed of the referee in the partition suit. If so, the judgment in the ejectment suit established both the title and the right to possession in Monnot. When the rightful owners moved away, they might reasonably have supposed that their title and right to possession were established, and that they might rest upon the security of that adjudication. It may fairly be inferred that the property was then of comparatively little value, and the fact that they did not concern themselves about it after removing to France is of no significance.

While I do not go so far as to say that express notice to them was necessary, I think that some act on Husson's part should have been shown to indicate the hostile character of his occupation other than the mere fact of such occupation. The rights of the parties had been settled by a judgment, executed by the sheriff. Unexplained, therefore, I think this re-entry should be deemed to be in recognition of the rights thus established, for it cannot be supposed, in the absence of proof, that he undertook to reassert rights in the face of a judgment, determining that he had none. No one was using the property. It was convenient for him to use it. Its rental value was trifling. So he reoccupied the stable.and the carriage house, opened the driveway, cut the grass which no one else wanted, used the property for a lawn and for his children to play lawn tennis and croquet, and cultivated flower beds upon it. Any one occupying Husson's farm might have put abandoned property, situated as these premises were with reference to his farm, to all the uses which he did without a thought of asserting a right in hostility to the true owner. His acts, therefore, unexplained, in the face of the judgment in the ejectment suit, were

not sufficient to show a possession or occupancy under a claim of title, exclusive of the right of the true owner.

On the 5th of October, 1875, the premises were sold for taxes, Husson becoming the purchaser, and a tax lease for 1,000 years, under the special statute then applicable to Westchester county, was granted to him. In February, 1876, the premises were redeemed from the sale by the attorneys who had represented Monnot in the ejectment suit. While it does not plainly appear, it may be inferred that Husson had re-entered prior to the purchase by him at the tax sale. If such entry was hostile, it was not necessarily changed by the subsequent acquisition of tax leases, for one in possession may acquire adverse titles without changing the character of his possession. However, no one but an owner could redeem, and, if Husson accepted the money paid on the redemption, that would doubtless have been a recognition of the owner's title and would have characterized his possession as subordinate to it. But the only proof on that subject is the Sales Book of the Town of Westchester, containing an entry showing that the sum of $31.75 was paid to redeem from the previous sale. But from that it does not follow that that sum was accepted by Husson. However, the judgment must be reversed on the ground that the acts of occupancy shown, commencing within a short time after the judgment determining the rights of the parties, were not such, when considered in the light of that judgment, as to raise any presumption of an adverse holding.

The judgment and order appealed from should therefore be reversed, and a new trial ordered, with costs to appellants to abide the event.

McLAUGHLIN, CLARKE, and DOWLING, JJ., concur.

INGRAHAM, P. J. (dissenting). The prevailing opinion assumes that there was sufficient evidence to justify a finding that the defendant and her ancestors have continuously occupied the premises in dispute for more than 20 years, and that the inclosure of the premises and the use to which they were put was a cultivation or improvement within the meaning of the statute. It is, however, proposed to reverse the judgment because of the fact that the proof is not sufficient to show that the entry of the defendant's predecessors in title was adverse to that of the plaintiff. With this conclusion I do not agree. The plaintiffs' predecessor had obtained a judgment awarding him the possession of the property. Ejectment, being a mere possessory action, is not necessarily an adjudication as to title. The defendant's predecessor in title had appealed from the judgment when the plaintiffs' ancestor committed suicide, and his family sailed for France, where they have since remained. To prosecute that appeal it would be necessary to revive the action, and it does not appear that any personal representative of the deceased had been appointed in whose name the action could have been revived. Nor was there anybody in this country then claiming possession of the property to whom the defendant's predecessor who had claimed title and had conducted a

litigation for years to establish his right to possession could give notice. Having claimed title, having at one time had a judgment in his favor, and having appealed from the judgment against him, all other claimants of the property having disappeared, he then, following out his claim in the litigation that he was entitled to possession, took possession of the property and has maintained it ever since. The fact of the litigation that had been carried on between the parties, and that during that litigation the defendant's predecessor had claimed title or the right to possession and had resisted the claim of the plaintiffs' predecessor to such possession is certainly evidence of an adverse claim to the property. I think it was sufficient to justify a finding of the jury that the possession was adverse and based upon a claim of title. Certainly, while a person is in active litigation as to the right to possession of a piece of property, and while that litigation is continuing obtains actual possession and holds it against all comers, the presumption can be indulged that his possession was under the claim of the title that had been the basis of his demand during the litigation and was adverse as to his opponent.

I think, therefore, there was evidence to justify the finding of the jury, and that this judgment should be affirmed.